**Miguel Espinoza DOMINGUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43051.**

Court of Criminal Appeals of Texas.

Nov. 18, 1970.

Jack N. Ferguson, El Paso (appointed on appeal only), for appellant.

Jamie C. Boyd, Dist. Atty., Wanda E. Creamer, Asst. Dist Atty., El Paso, for the State.

OPINION
ON APPELLANT'S MOTION
FOR REHEARING

BELCHER, Judge.

The conviction is under Art. 802c, Vernon's Ann.P.C., for the offense of murder without malice; the punishment, three years.

The prior opinion is withdrawn.

The appellant contends that the evidence is insufficient to support the conviction.

The testimony of the state reflects that while Diana Alexander and Elizabeth Ann Kelly, age ten at time of trial, were at a street intersection Elizabeth saw a car weaving back and forth and coming toward them, and the next thing she knew she had fallen.

Mary Nielsen, who was working in a building at a corner of said intersection at the time in question testified that she was cleaning her plate glass window when she saw two little girls standing across the street and a car coming down the street weaving. She saw what she first thought was a piece

of paper fly then realized the child was hit; the car passed and then stopped, and the little girl was lying there. At that time she saw the driver of the car, who she identified as the appellant, get out of the car and go up to the little girl. The little girl was bleeding all over, and the appellant was standing there swaying. Nielsen said, "Idiot" or "Stupid" and "See what you done," and the appellant replied, "I didn't; they run in front of me."

Nielsen further testified that she had worked in bars and lounges for nineteen years and had seen thousands of people that had been intoxicated or drunk, and "plus all these elements and the defendant's behavior, and your observations of the defendant at the scene," she was of the opinion that the appellant was drunk.

Clara Kelly, the mother of Elizabeth with whom Diana Alexander had spent the previous night, went to the scene in response to a telephone call where she saw Elizabeth standing and Diana lying on the ground; and she went to the hospital with Diana.

Officer Lombrana testified that he arrived at the scene four or five minutes after receiving a police radio dispatch. He testified, without objection, that appellant told him he was driving the car; and that he found particles of broken glass at the scene on the street. He further testified that he knew of his personal knowledge that Diana Alexander was taken to the Providence Memorial Hospital and that he saw her there.

Dr. Kaip, a physician, testified that he was in the emergency room of Providence Memorial Hospital when a young girl about nine year of age was brought in at the time in question. While testifying, he identified the copy of a hospital record bearing the name of Diana Alexander, age nine, and stated he examined the patient and immediately afterwards wrote the results on the record but not the name or age. He then read from the record, without objection. He further testified that said patient had injuries all over her including a soft skull and chest and multiple rib injuries, and expressed the opinion that her condition was consistent with a person who had been run over by an automobile; and that she died of the injuries she had when he examined her.

While testifying in his own behalf, the appellant described the occurrence as follows:

"A  There was another car ahead of me; there was a paper blew out from my car and hit the windshield. This paper hit my windshield. I blinked this way and then I twisted the wheel of my car; that's when I— that's when I hit the other car, but I did not see when I hit that little girl.

"Q  Did you hit the little girl?

"A  No, I don't remember of having hit her, because I didn't see her.

"Q  Did you hit another car?

"A  Yes, sir."

On cross-examination the appellant testified:

"Q  When do you remember seeing little girls down there?

"A  I didn't see them, never saw them.

"Q  You just said now that you remembered seeing the little girls, and they were behind you.

"A  I heard the yell; I didn't see them.

"Q  I see.

"A  I heard the yell; but I didn't see them.

"Q  In that moment's notice, you were able to distinguish the cries of a child or a woman and the the difference between those cries?

"A  It was the cry of a child, more like a child.

"Q  How fast were you traveling?

"A  About forty, I believe.

**630**

* * * * * *

"Q Now, on direct examination, Mr. Dominguez, you stated to your attorney that you did not remember whether you had struck those girls or not, and now you're saying that you did not definitely. Now, which is it?

"A I didn't hit anyone, no, sir.

* * * * * *

"Q Mr. Dominguez, isn't it true that Mary Nielsen talked to you there at the scene?

"A No, I don't remember having talked to her.

"Q Well, isn't it true that you told her that the little girls run in front of you?

"Mr. Chew: He said he hasn't talk-to her, Your Honor.

"The Court: I'll permit that examination now.

"A No, sir, I did't say that to her. No woman talked to me."

Assuming that the appellant's statement to Mary Nielsen that, "I didn't; they run in front of me" was exculpatory, the other testimony of the state as shown is sufficient to disprove said statement. No charge was given on exculpatory statements; and no objection was made to the failure to so charge and no requested charges thereon were presented to the court. 31 Tex.Jur.2d 697, Sec. 128; 1 Branch 2d 103, Sec. 95.

The facts and circumstances are sufficient to support the conviction.

■ In his brief the appellant presents the following:

*"Informal Bill of Exception No. Two
Invalid Consent to Blood Test*

"This appears in the statement of facts at page 99, lines 19 to 24 and page 100, lines 7 to end of page, all of page 101, page 102, lines 1 to 4."

This does not constitute a ground of error as required by Art. 40.09, Sec. 9, Vernon's Ann.C.C.P.

■ From an examination of said references it appears that his complaint is to the admission in evidence of the results of the blood test because his consent was illegally obtained. To support his position before the trial court he urged:

"Mr. Chew: It's not a true consent when you tell him it's a right. It's not a true consent when you tell him that it can be used for or against him, and then it's so intertwined and so close proximity with the statutory warning it becomes a part of the statutory warning. Any search subsequent to—if the warning is wrong, any search subsequent to it isn't any good."

The testimony of Officer Villa reflects that he took the appellant from the scene where the alleged offense occurred about 11:30 a. m., to Justice of the Peace Lewis who warned him in accordance with the provisions of Art. 15.17, V.A.C.C.P., about 12:29 p. m. Judge Lewis also advised the appellant of his right to take a blood test if he so desired and that such test could be used against him or for him. Officer Villa then took appellant to a hospital where he consented to give a specimen of his blood and signed a consent form for the test. No objections were made to this testimony.

The issue of whether the appellant voluntarily gave the sample of blood for the purpose of determining its alcoholic content was submitted to the jury. They were instructed that unless they so found that it was voluntarily given beyond a reasonable doubt or if they had a reasonable doubt thereof not to consider such evidence.

In considering a similar contention this Court in Ballard v. State, Tex.Cr.App., 450 S.W.2d 83, said:

"The record reflects that appellant was given an opportunity to allow a blood sample to be taken from him and was told that, if taken and analyzed scientifically, the result could be used either for or against him. He consented, the blood sample was taken and analyzed, the result showing a 0.301% concentration of alcohol.

"The taking of the blood sample did not infringe upon appellant's constitutional rights. Hearn v. State, Tex.Cr. App., 411 S.W.2d 543; Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908." See also: Hearn v. State, Tex.Cr.App., 411 S.W.2d 543.

The matter here presented does not reveal error.

Appellant's "Informal Bill of Exception No. Three—Consent to Blood Test—Best Evidence Rule" refers to pages 101 and 102 of the record which reflect that he complained of the failure of the state to produce his written consent to take the blood test.

The consideration and disposition of the previous complaint is applicable and here controlling. No error is shown.

The appellant complains of *"oral confessions"* and refers to pages 54, 56, and 57 of the record. There it is reflected that: Officer Lombrana immediately upon arrival at the scene asked appellant for his address, if he was driving the car, and if he knew he had struck the little girl; and testified that appellant told him he had had a few beers and later he had ten more beers.

In view of appellant's testimony at the trial that he was driving the automobile at the time and place in question, that he had drunk four beers, that when his car hit another car at the scene he heard the "cry

of a child" but he had not seen or hit the little girls, and that he stopped and returned to the scene and found the little girl lying on the ground, no error is presented.

Complaint is made of the "Impeachment of Defendant with Inadmissible Statement." In connection therewith he refers to page 150 of the record. From an examination and consideration of said record and the brief in support thereof it is concluded that no error is shown.

*"Informal Bill of Exception No. Five Improper Argument*

"This appears in the statement of facts at page 191, lines 14 to 22."

Although the appellant's only complaint at the time of the argument referred to was that "I object—that's improper," it appears that the argument was in reply to appellant's argument about witnesses the state failed to call. The argument was not in violation of any mandatory statute. No error is shown.

The appellant urges three complaints to the court's charge.

These complaints were dictated to the court reporter and appear in the record immediately following the close of the evidence.

There are no written objections to the court's charge or requested charges in the transcript.

In the absence of an objection or special requested charge in writing and timely filed as required by Articles 36.14 and 36.15, V.A.C.C.P., nothing pertaining to the court's charge is presented for review. Seefurth v. State, Tex.Cr.App., 422 S.W.2d 931; Sockwell v. State, Tex.Cr. App., 429 S.W.2d 460; Smith v. State, Tex.Cr.App., 430 S.W.2d 496; Walker v. State, Tex.Cr.App., 440 S.W.2d 653.

The judgment is affirmed. The appellant's motion for rehearing is overruled.