**Daniel Gig ERDMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1175–90.**

Court of Criminal Appeals of Texas, En Banc.

May 19, 1993.

Rehearing Denied Sept. 29, 1993.

Brian W. Wice, J. Gary Trichter, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr., Gary Oncken & Susan Baetz Brown, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant, Daniel Gig Erdman, was arrested and charged with the offense of driving while intoxicated (D.W.I.). *See* Tex.Rev.Civ. Stat. art. 6701 *l*–1(b). He later filed a motion to suppress the results of an intoxilyzer test administered to him shortly after his arrest. The trial court overruled the motion, however, after an evidentiary hearing. Appellant then pled nolo contendere but reserved the right to appeal the suppression question. *See* Tex.Code Crim.Proc. art. 44.02.. The trial court assessed appellant's punishment at incarceration for one year (probated for two years) and a fine of $600. The Fourteenth Court of Appeals subsequently affirmed the trial court's judgment. *Erdman v. State,* 796 S.W.2d 243 (Tex.App.—Houston [14th Dist.] 1990). We granted appellant's petition for discretionary review[1] to determine whether the court of appeals erred in holding that the trial court did not abuse its discretion in refusing to suppress the intoxilyzer test results. We now reverse.

### I

The relevant facts are not in dispute. At approximately 12:20 a.m., March 27, 1989, a Harris County deputy sheriff observed a Mercedes automobile "weaving" from lane to lane on a Harris County highway. Although the deputy activated his patrol unit's siren, overhead lights, and spotlight, the Mercedes continued down the highway almost a mile before pulling over and stopping. The deputy then approached the Mercedes on foot and asked the driver (appellant) to step out. Appellant stumbled out of his automobile, and the deputy, who smelled alcohol on appellant's breath and believed him to be "highly intoxicated," arrested him immediately. The deputy then radioed for another patrol unit to take appellant to the county jail.

A Department of Public Safety (D.P.S.) trooper responded to the deputy's radio call and arrived at the scene at 12:30 a.m. The trooper took appellant into custody and proceeded to a county jail annex in Humble, arriving there at around 1:00 a.m. Upon arriving at the annex, the trooper asked appellant to submit to an intoxilyzer test. The trooper explained to appellant that if he took the test and "passed" it, he would not be charged with D.W.I. that night, but that if he took the test and "failed" it, he would be charged with D.W.I. that night. The trooper also warned appellant that if he refused to take the test, then (1) evidence of his refusal would be admissible against him in a subsequent prosecution, (2) his driver's license would be suspended for 90 days, (3) D.W.I. charges would be filed against him, and (4) he would be placed in jail that night. After receiving this extensive warning, appellant consented to the intoxilyzer test. The test results indicated appellant was legally intoxicated.

In his written pretrial motion to suppress the intoxilyzer test results, appellant con-

---

1. Appellant's ground for review reads as follows: "Whether the court of appeals utilized an incorrect standard of review in rejecting the contention that the appellant's purported consent to submit to the intoxilyzer test was involuntarily obtained in violation of Article 38.23 [of the Texas Code of Criminal Procedure]." A complete reading of appellant's petition for discretionary review makes clear, however, that his complaint has nothing whatsoever to do with the appropriate appellate "standard of review." Rather, appellant's true complaint is that the undisputed record evidence shows that his consent to the intoxilyzer test was involuntary and that the Fourteenth Court's holding to the contrary conflicted with *State v. Sells,* 798 S.W.2d 865 (Tex.App.—Austin 1990, no pet.). Indeed, the reason we granted review in this case was that the decisions of the two courts of appeals conflicted. *See* Tex.R.App.P. 200(c)(1).

tended generally that his consent to the test was obtained involuntarily, in violation of Texas Revised Civil Statutes article 6701 *l*–5, § 2, and that the test results were therefore inadmissible under Texas Code of Criminal Procedure article 38.23. Article 6701 *l*–5 provides in pertinent part:

> Sec. 1  Any person who operates a motor vehicle upon the public highways or upon a public beach in this state shall be deemed to have given consent, subject to the provisions of this Act, to submit to the taking of one or more specimens of his breath or blood for the purpose of analysis to determine the alcohol concentration or the presence in his body of a controlled substance or drug if arrested for any offense arising out of acts alleged to have been committed while a person was driving or in actual physical control of a motor vehicle while intoxicated.... The specimen, or specimens, shall be taken at the request of a peace officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways or upon a public beach in this state while intoxicated.
>
> Sec. 2  (a) [With an exception not applicable here], *if a person under arrest refuses, upon request of a peace officer, to give a specimen designated by the peace officer as provided in Section 1, none shall be taken.*
>
> (b) *Before requesting a person to give a specimen, the officer shall inform the person orally and in writing that if the person refuses to give the specimen, that refusal may be admissible in a subsequent prosecution, and that the person's license, permit, or privilege to operate a motor vehicle will be automatically suspended for 90 days* ..., whether or not the person is subsequently prosecuted as a result of the arrest.

(Emphasis added.)  Article 38.23 provides in pertinent part:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admit-

ted against the accused on the trial of any criminal case.

At the hearing on the suppression motion, defense counsel argued more specifically that appellant's consent to the intoxilyzer test was involuntary because it was psychologically coerced:

> I think that the court needs to be very sensitive about what a [peace officer] can tell a defendant with respect to the sanctions provided by the statute and what he can't tell a defendant. As far as sanctions under the statute, if you refuse a breath test under Texas law, only two things can happen by statute. One, that you lose your license for ninety days.... And two, a jury can be told the fact that the person refused. Well, [the D.P.S. trooper here] addresse[d] something more. He indicate[d] that—and I believe this goes to the issue of coercion—that if you don't take the test, you are, in effect, volunteering to go to jail. If you don't take the test, you are volunteering to have D.W.I. charges filed against you. Those are pretty severe sanctions....

The State counterargued that "the defendant made the decision [to] take that breath test without any real coercion. The [trooper] simply stated the facts."

At the end of the suppression hearing, the trial court concluded, "I do not think that [the trooper's warning] was coercive in nature. I think that [it] was explanatory and reasonably accurate in light of the situation there.... I will not suppress the breath test."

The court of appeals upheld the trial court's ruling, explaining that it discerned no abuse of discretion on the part of the trial court. Although the court of appeals conceded that the D.P.S. trooper warned appellant erroneously with regard to the direct consequences of a refusal to submit to a breath test, the court of appeals concluded that the erroneous warning was not "so coercive as to render the consent involuntary." *Erdman v. State*, 796 S.W.2d at 244.

In his brief before this Court, appellant argues that Article 6701 *l*–5, § 2(b), "provides that the consequences [of] refusal to

furnish a ... breath sample are limited to the suspension of the [motorist's] driver's license for 90 days and the admissibility of [that] refusal [in evidence] if the [motorist] is subsequently prosecuted;" that the statute implicitly prohibits peace officers from "threaten[ing] motorists with sanctions ... not permitted by the statute;" that the D.P.S. trooper's misstatement of the direct consequences of refusal "was more than enough to render ... appellant's consent involuntary;" that the results of the intoxilyzer test were thus obtained in violation of Article 6701 *l*–5, § 2, and were inadmissible under Article 38.23; and that, therefore, the trial court abused its discretion in refusing to suppress the intoxilyzer test results.

In its reply brief, the State argues that it carried its burden of proving that appellant's consent to the intoxilyzer test was voluntary [2] and that, therefore, the trial court did not abuse its discretion in refusing to suppress the breath test results. In particular, the State argues that "[w]hat [the trooper] said about a refusal [to submit to an intoxilyzer test] was true, as a practical matter," because "[i]t was virtually certain that a prosecutor would file a D.W.I. case in the event of a refusal." The State argues further that, as a matter of law, "[f]actually true statements are neither coercive nor deceptive."

## II.

▇▇▇ A trial court's ruling concerning the admission or exclusion of evidence may not be disturbed on appeal unless an abuse of discretion is shown. *Rivera v. State,* 808 S.W.2d 80, 96 (Tex.Cr.App.1991). Of course, a trial court necessarily abuses its discretion if it refuses to suppress evidence that was obtained in violation of state statutory law and is, therefore, inadmissible under Article 38.23.

▇▇▇ Article 6701 *l*–5, § 2, provides (with an exception not applicable here) that if a person under arrest for D.W.I. refuses to submit to a breath test, "none shall be tak-

en." The same section provides that a person so arrested must be warned that two specific consequences—only two—will definitely and directly result from a refusal to submit to a breath test: the person's driver's license will be suspended for 90 days and evidence of her refusal will be admissible against her in court. The Legislature has provided that only these two sanctions will directly result from a refusal to submit to a breath test.

▇▇▇ We have recognized previously that, under Article 6701 *l*–5, § 2, a suspect's consent to a breath test must be "voluntary," *Turpin v. State,* 606 S.W.2d 907, 914 (Tex.Cr. App.1980), and that the section "requires that a suspect's refusal to provide a breath sample be strictly honored." *McCambridge v. State,* 712 S.W.2d 499, 504 fn. 16 (Tex.Cr. App.1986). Thus, it is implicit in Article 6701 *l*–5, § 2, that a suspect's decision to submit to a breath test must truly be her own, made freely and with a correct understanding of the actual statutory consequences of refusal. To be "voluntary" and thus consistent with the statutory scheme, a suspect's decision to submit must not be the result of physical or psychological pressures brought to bear by law enforcement officials. *Forte v. State,* 759 S.W.2d 128, 138 (Tex.Cr.App.1988) (consent to breath test involuntary if induced by physical force); *Hall v. State,* 649 S.W.2d 627, 628 (Tex.Cr.App.1983) (consent to breath test involuntary if induced by misstatement of direct statutory consequences arising from refusal). If law enforcement officials were permitted to "warn" D.W.I. suspects—even correctly—that a refusal to submit would result in consequences not contemplated by Article 6701 *l*–5, § 2, then suspects could easily be coerced into submission, and the protection afforded by this statutory section would be undermined.

▇▇▇ Here, appellant consented to the intoxilyzer test only after the trooper gave him warnings, both contemplated and not contemplated by Article 6701 *l*–5, concerning the

---

**2.** In its brief, the State forthrightly "agrees with the general proposition that [it] has a burden of showing voluntary consent to an intoxilyzer test." We will assume without deciding, therefore, that under Article 6701 *l*–5, § 2, the State

has the burden of showing voluntary consent to a breath test. For reasons that will become clear later in this opinion, we need not determine today the applicable *standard* of proof. *See* W. LaFave, *Search and Seizure* §§ 11.2(b)–(c) (1987).

consequences of refusal. The non-statutory information conveyed to appellant (that he would be jailed and charged with D.W.I.) was of the type that would normally result in considerable psychological pressure upon a D.W.I. suspect to consent to the taking of a breath sample. Given the complete absence of any record evidence showing that this non-statutory information given to appellant had *no* bearing on his decision to consent, no rational factfinder could conclude that the State carried its burden of showing that appellant's consent was voluntary. Thus, appellant's consent to the intoxilyzer test was obtained in violation of Article 6701 *l*-5, § 2, and, therefore, the test results were inadmissible under Article 38.23. The trial court abused its discretion in refusing to suppress those test results.

It should not be gleaned from this opinion that we are concluding that the trooper necessarily acted in bad faith by warning appellant of sanctions not included in Article 6701 *l*-5, § 2. We are holding only that law enforcement officials must take care to warn D.W.I. suspects correctly about the actual, direct, *statutory* consequences of refusal. Any other information conveyed to D.W.I. suspects may have the effect—either intended or unintended—of undermining their resolve and effectively coercing them to consent.[3]

The judgment of the court of appeals is REVERSED and the case REMANDED to the trial court for further proceedings.

CLINTON, J., agreeing with the theory of inducement advanced in *State v. Sells*, 798 S.W.2d 865 (Tex.App.—Austin 1990), concurs in the judgment of the Court.

WHITE, J., concurs in the result.

BAIRD, Judge, concurring.

We granted this petition to determine whether the Court of Appeals applied the correct standard of review.[1] However, as the majority notes, the petition deals more with the voluntary nature of the consent than the standard of appellate review. *Erdman v. State*, 861 S.W.2d 890, 891 n. 1 (Tex.Cr.App. 1993). I write separately because this case necessarily involves the question of which standard of appellate review is correct and the majority does not address the issue.

## I. THE COURT OF APPEALS' HOLDING

On direct appeal, appellant contended the trial judge erred in overruling the motion to suppress. Although the Court of Appeals found appellant was erroneously advised of the consequences of his refusal to consent to the intoxilyzer test, the Court concluded the error was not so coercive as to render the consent involuntary. *Erdman v. State*, 796 S.W.2d 243, 244 (Tex.App.—Houston [14th Dist.] 1990). The Court of Appeals overruled the point of error because there had been "no clear abuse of discretion by the trial court." *Id.* at 245.

In order for an appellate court to correctly apply any standard of review, the appellate court must first determine what burden of proof was required at the trial level, and then review the decision of the trial judge in light of that burden. However, the Court of Appeals failed to state what burden of proof should have been employed at the trial level to establish that appellant's consent was vol-

---

3. In *State v. Sells*, 798 S.W.2d 865 (Tex.App.—Austin 1990, no pet.), the Third Court of Appeals reached the same conclusion we do today on almost identical facts. There, a D.W.I. suspect was warned by a police officer shortly after his arrest that if he refused to submit to a breath test, he "would automatically be charged and incarcerated." The suspect consented to the test but later contended that his consent had been psychologically coerced. The trial court agreed and suppressed the results of the breath test. The Third Court, citing our opinion in *Hall v. State*, 649 S.W.2d 627 (Tex.Cr.App.1983), upheld the trial court's ruling, explaining that "[i]f a driver's consent [to a breath test] is induced by

an officer's misstatement of the consequences flowing from a refusal to take the test, the consent is not voluntary." *State v. Sells*, 798 S.W.2d at 867.

1. Specifically, appellant's question for review asks:

   Whether the Court of Appeals utilized an incorrect standard of review in rejecting the contention that the Appellant's purported consent to submit to the intoxilyzer test was involuntarily obtained in violation of Article 38.23, V.A.C.C.P.

untary. Therefore, the threshold issue in this case is what burden of proof is extant at the trial level when the defendant contends his consent to the intoxilyzer test was involuntary.

## II. MIXED QUESTION OF FACT AND LAW

The Court of Appeals treated the question of the voluntariness of appellant's consent as purely a question of fact to be resolved by the factfinder. *Erdman*, 796 S.W.2d at 244. However, that treatment was erroneous. The question of voluntariness of consent presents a mixed question of fact and law. *Stephenson v. State*, 494 S.W.2d 900, 904 (Tex.Cr.App.1973) (citing *Hoover v. Beto*, 439 F.2d 913 (5th Cir.1971)). Before the factfinder can consider evidence obtained as a result of the consent, the factfinder must first determine, from the totality of all the circumstances, that the consent was voluntary. *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Cr. App.1985). To hold consent presents only questions of fact would effectively insulate consent issues from appellate review.[2]

## III. BURDEN OF PROOF AT THE TRIAL LEVEL

Although, evidence obtained as a result of the intoxilyzer test is non-testimonial in nature, *Turpin v. State*, 606 S.W.2d 907, 913–14 (Tex.Cr.App.1980), consent to an intoxilyzer test must be voluntary. *Id.*, 606 S.W.2d at 914 (citing *Dominguez v. State*, 459 S.W.2d 628 (Tex.Cr.App.1970)). Clearly, physical force may not be used to require submission to the intoxilyzer test. *Forte v. State*, 759 S.W.2d 128, 138 (Tex.Cr.App.1988) (quoting *State v. Spencer*, 305 Or. 59, 750 P.2d 147 (1988); and *McCambridge v. State*, 712 S.W.2d 499, 504, n. 16 (Tex.Cr.App.1986)). However, not only physical force is forbidden. Consent to take the intoxilyzer may be involuntary if induced by the officer's misstatement of the implied consent law. *State*

*v. Sells*, 798 S.W.2d 865, 866–867 (Tex.App.— Austin 1990, no pet.)[3].

In other areas of our law, the State is required to prove consent was freely and voluntarily given, by clear and convincing evidence. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Cr.App.1976). This burden requires the State to show the consent was positive and unequivocal, free of duress or coercion, actual or implied. *Kolb*, 532 S.W.2d at 90; *Allen v. State*, 487 S.W.2d 120, 121 (Tex.Cr.App.1972). I see no reason to depart from this established standard. Therefore, in cases where the defendant contends his consent to take the intoxilyzer was involuntary, the State bears the burden of proving, by clear and convincing evidence, that the consent was voluntary.

## IV. STANDARD OF APPELLATE REVIEW·

With the foregoing in mind, we must next decide what standard of review the appellate court should apply. As previously noted, the Court of Appeals purported to rely upon the *"clear abuse of discretion"* standard. However, in *Sells* the Austin Court of Appeals used the *"abuse of discretion"* standard. *Sells*, 798 S.W.2d at 867. There is no meaningful distinction between the standards; we have defined the two in precisely the same way. In *Cantu v. State*, 842 S.W.2d 667 (Tex.Cr.App.1992), we defined a clear abuse of discretion as a decision by the trial court which is "so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Cantu*, 842 S.W.2d at 682. For that definition, we relied on *Montgomery v. State*, 810 S.W.2d 372 (Tex.Cr.App.1990) (op. on reh'g), where we held there is no abuse of discretion "as long as the trial court's ruling was at least within the zone of reasonable disagreement...." *Montgomery*, 810 S.W.2d at 391. Therefore, the stan-

2. As the State notes, "the mixed question of law and fact also requires examination of applicable doctrines which might render a factually voluntary act 'involuntary' for legal purposes." State's brief on appellant's PDR, pg. 12.

3. Our law provides that any person operating a motor vehicle upon the public highways of our state impliedly consents to the taking of a speci-

men of his breath or blood to determine the alcohol concentration or the presence of a controlled substance in his body. Tex.Rev.Civ.Stat. art. 6701 *l*–5 § 1. Refusal to submit to the test will result in the suspension of one's driver's license and may be used as evidence in a subsequent prosecution, but does *not* trigger the filing of charges or incarceration.

dards are the same and used interchangeably. Finally, the abuse of discretion standard is the appropriate standard of appellate review to be applied by appellate courts in consent cases. *Gilmore v. State*, 666 S.W.2d 136, 148 (Tex.App.—Amarillo 1983) (citing *Williams v. State*, 535 S.W.2d 637 (Tex.Cr. App.1976)). *See also*, *State v. Comeaux*, 786 S.W.2d 480, 485-6 (Tex.App.—Austin 1990), *aff'd*, *State v. Comeaux*, 818 S.W.2d 46, 53 (Tex.Cr.App.1991).

## V. APPLICATION

To prove by clear and convincing evidence the voluntariness of appellant's consent, the State was required to show the consent was positive and unequivocal, free of duress and coercion, actual or implied. *Kolb*, 532 S.W.2d at 90; *Allen*, 487 S.W.2d at 121. In this case, appellant consented to the intoxilyzer test only after being advised of the statutory warnings pursuant to Tex.Rev.Civ.Stat. art. 6701 *l*-5 § 2,[4] *and* after being erroneously

4. Tex.Rev.Civ.Stat. art. 6701 *l*-5 § 2(a) provides in part:
   "... if a person under arrest refuses, upon the request of a peace officer, to give a specimen designated by the peace officer ... *none shall be taken.*"
   Tex.Rev.Civ.Stat. art. 6701 *l*-5 § 2(b) provides in part:
   Before requesting a person to give a specimen, the officer shall inform the person orally and in writing that if the person refuses to give the specimen, that refusal may be admissible in a *subsequent prosecution, and that the per*son's license, permit, or privilege to operate a motor vehicle will be automatically suspended for 90 days after the date of the adjournment of the hearing provided for in Subsection (f) of this section, whether or not the person is subsequently prosecuted as a result of the arrest....

5. The State contends that, as a practical matter, the statements were true, i.e., that appellant's refusal to submit to an intoxilyzer test would result in his being charged and incarcerated. To support the contention, the State discusses how driving while intoxicated cases are handled in Harris County. However, the discussion is *not* supported by the appellate record. Information not found in the appellate record may not be utilized for appellate review. *Pollan v. State*, 612 S.W.2d 594, 596 (Tex.Cr.App.1981).

6. In *Sells*, the defendant asked what the consequences would be of a refusal to submit to an intoxilyzer test. The officer replied that the defendant "would automatically be charged and incarcerated." *Id.*, 798 S.W.2d at 866. The trial

advised that his refusal would result in his incarceration while passing the intoxilyzer test would result in his release.[5] As the Court of Appeals held in *Sells*, 798 S.W.2d 865, "If a driver's consent is induced by an officer's misstatement of the consequences flowing from a refusal to take the test, the consent is not voluntary." *Sells*, 798 S.W.2d at 867 (citing *Hall v. State*, 649 S.W.2d 627 (Tex.Cr.App.1983)).[6] In the absence of evidence indicating appellant's consent was *not* induced by the erroneous statements, the State failed, *as a matter of law*, to prove by clear and convincing evidence, that appellant's consent was voluntary. Therefore, the Court of Appeals erred in finding the trial judge did not abuse his discretion in finding appellant's consent was voluntary.

With these comments, I join the majority opinion.

MILLER and MALONEY, JJ., join this opinion.

judge found the officer's misstatement of the implied consent law rose to the level of coercion and ordered the results of the intoxilyzer test suppressed. The State appealed contending "the trial court erred by concluding that the officer's misstatement rendered [the defendant's] consent involuntary." The Court of Appeals rejected the State's argument and affirmed the decision of the trial judge, holding:

While the implied consent law forbids the use of physical force to compel submission to a breath or blood test, it does not follow that *only* physical force is forbidden. The Court of Criminal Appeals has repeatedly stated that a driver's consent to a blood or breath test must be voluntary. *Turpin v. State*, 606 S.W.2d 907, 914 (Tex.Cr.App.1980); *Hearn v. State*, 411 S.W.2d 543, 545 (Tex.Cr.App.1967). If a driver's consent is induced by an officer's misstatement of the consequences flowing from a refusal to take the test, the consent is not voluntary. *Hall v. State*, 649 S.W.2d 627 (Tex.Cr.App.1983). The officer in *Hall* allegedly told the driver that if he refused to take a breath test "you're automatically convicted of DWI and your license will be suspended." The court held that this raised the issue of voluntariness.

We believe that *Hall* is dispositive of this cause. Having found that [the defendant's] consent to the breath test was induced by the officer's misstatement of the implied consent law, the trial court did not abuse its discretion in granting the motion to suppress. Tex.Code Cr.P.Ann. art. 38.23(a) (Supp.1990).

*Sells*, 798 S.W.2d at 866-67.

McCORMICK, Presiding Judge, dissenting.

Although I do not disagree with the general propositions of law set forth by the majority, I must respectfully dissent to the conclusion that Officer Campbell's actions rose to any level of coercion such as to demonstrate that appellant's consent was anything but freely and voluntarily given.

During the suppression hearing, Officer Campbell testified that in every case of D.W.I. he explains to the suspect what the procedures are and what is going to happen. In the instant case, Officer Campbell was completely honest with the appellant: he told the appellant that if he refused the intoxilyzer test he would be charged with D.W.I. and incarcerated and that the appellant could still have a blood test. If anything, this honesty of the Officer makes the appellant's decision to take the test even more informed since he had all options before him. I simply cannot subscribe to the idea that when an officer openly and honestly responds to an accused's inquiries concerning the procedures the officer will follow, such rises to the level of coercion.

The majority relies on the Austin Court of Appeals' decision in *State v. Sells*, 798 S.W.2d 865 (Tex.App.—Austin 1990), and the interpretation of our opinion in *Hall v. State*, 649 S.W.2d 627 (Tex.Cr.App.1983). As the author for the Court of the *Hall* opinion, I must point out that it is not applicable to the facts before us. *Hall* was a jury instruction case where the officer had misstated the law to a D.W.I. suspect. It was argued that this misstatement coerced the defendant to consent to the breathalyzer and that such consent was therefore involuntary. The defendant, based on this evidence, sought a jury instruction on voluntariness pursuant to Article 38.-23, V.A.C.C.P. This Court concluded that since the evidence raised the issue the defendant was entitled to a charge on voluntariness.

Such is not the case here. Officer Campbell made no misstatement of the law. Furthermore, no promise of a benefit was made to appellant such as to render his decision coerced or involuntary. The decisions of the trial court and Court of Appeals should be affirmed. I dissent.

OVERSTREET, Judge, dissenting.

I disagree with the conclusion that in the instant cause the trial court abused its discretion in finding that appellant's consent was voluntary.

The record which appellant brings before us is somewhat murky with respect to precisely what he was told by the trooper regarding the taking of the breath test. Appellant did not testify at the suppression hearing. The specifics, such as were shown, were elicited via the trooper. The trooper transported appellant and advised him of the statutory warnings pursuant to Tex.Rev.Civ. Stat. Article 6701 *l*–5 § 2 and requested that he submit to an intoxilyzer test. Appellant shortly thereafter refused to submit to the intoxilyzer test.

The trooper testified that he did not remember exactly what he told appellant while in transit to the substation, i.e. the Harris County jail annex in Humble. He stated that he explained to all suspects who are arrested what is going to happen to them when they get to the jail; however, he could not state exactly what was said to appellant. He indicated that he "probably" made appellant aware that he was probably going to the substation for the purpose of participating in a video taping. He indicated that he did tell appellant that he would be brought down for an intoxilyzer breath test. The trooper stated that he did not remember the very first place that he had brought appellant after arriving at the substation, but did recall that appellant initially refused to take the breath test. The trooper did not remember where that refusal took place. The trooper testified that appellant "did not want to take the test when [they] first got there." The trooper was unable to state in which room at the substation he gave appellant the above-mentioned warnings, but was sure that he gave appellant a copy and read it aloud to him.

The trooper believed that he read the warnings in the video room, whereupon appellant decided that he did not want to take the test, but then decided that he wanted to take it; whereupon they then went to the

intoxilyzer room and appellant was given a written copy of the warnings. The trooper did not recall exactly what he had said to appellant about refusing to take the breath test and losing his license for ninety days, but stated that he "d[oes] explain to subjects that that's what happens." The trooper responded affirmatively when asked if at that same time he would have told appellant that if he refused the breath test that DWI charges would be filed against him and he would be placed in jail. He also indicated that he told appellant that if he took and passed the breath test "[h]e would not be charged that night with D.W.I." The trooper responded affirmatively when then asked if appellant thereafter went into the video room on the trooper's instructions. The trooper indicated that there was no doubt in his mind that prior to the time appellant walked into the video room, he had refused to take the breath test. The trooper did state that appellant had read the written statutory admonition "down there in the intoxilyzer room." However, he then indicated that he did not have any independent memory of that, though he knew it was in the intoxilyzer room because that was where the forms were. The trooper later indicated that his period of observing appellant began at the time he learned that appellant was going to take the breath test and that such would have been in the video room, and that then would have been when he had read appellant the oral DWI warnings and provided him with the written warnings. The trooper later indicated that he had begun the observation period in the intoxilyzer room when appellant refused, then they went down to the video room and appellant decided to take the test.

Later, under questioning by the prosecutor, the trooper indicated that his usual procedure was to walk an arrestee inside the substation, walk down to the intoxilyzer room, and then explain about taking the breath test. If the arrestee wants to take it, they sit down and fill out the DIC–24 form. He fills it out and lets the arrestee read it, then he reads it to them. He indicated that this was the procedure that was followed with appellant, but that appellant indicated that he did not want to take the intoxilyzer test, so the trooper "told him [']fine[']."

They then "left the room and went back to the video room." He indicated that they eventually returned to the intoxilyzer room after the first part of a video interview. The trooper then further explained that he had initially brought appellant into the intoxilyzer room, filled out the DIC–24 form, read it aloud while appellant read his copy; whereupon appellant stated that he did not want to take the test, so they "got up and . . . left out of there." Later they returned to the intoxilyzer room, whereupon the trooper observed appellant for 15 minutes prior to giving him the breath test. The trooper indicated that at that time, he did not fill out any paperwork.

Thus, while the trooper properly warned appellant about the statutorily prescribed consequences of refusing to submit to the breath test pursuant to Article 6701 *l*–5 § 2, he additionally informed appellant that if he refused the breath test, DWI charges would be filed against him and he would be placed in jail, but that if he took and passed the breath test "[h]e would not be charged that night with D.W.I." No doubt the correct and better practice is for law enforcement officials to simply and only read the statutory warnings contemplated by Article 6701 *l*–5. This Court appears to ignore the reality that this record reveals, that is that the appellant (not uncommonly) vacillated back and forth (for whatever reasons) on whether or not to submit to the intoxilyzer test. The record does not contain discernible reasons why the trooper gave additional warnings not contemplated by the statute, nor does the record reflect that the trooper was ever asked why. I do not find the trooper's additional statements to be untrue or in any way coercive. The record does not demonstrate that appellant relied upon the trooper's statements in changing his mind and subsequently agreeing to take the breath test.

In the face of this record, I do not see any abuse of discretion by the trial court in finding that appellant's consent was voluntary. The record supports a finding that by clear and convincing evidence appellant's consent was voluntary. Thus, the decisions of both the trial court and the court of appeals

should be affirmed. With these comments, I respectfully dissent to the majority opinion.