**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**Gerald Douglas McGLAUN, Appellee.**

No. 2–00–129–CV.

Court of Appeals of Texas, Fort Worth.

June 21, 2001.

---

Carla E. Eldred, Asst. Gen. Counsel, Kevin M. Givens, Supervising Atty., ALR Appeals, Austin, for Appellant.

Ronald G. Knight, Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; DAY and WALKER, JJ.

## OPINION

DAY, Justice.

### I. INTRODUCTION

The Texas Department of Public Safety ("DPS") appeals a county court at law ruling affirming an administrative law judge's ("ALJ") denial of the DPS's suspension of Gerald Douglas McGlaun's driver's license. In three issues, the DPS challenges the ALJ's refusal to suspend McGlaun's license because he was not warned that his refusal to submit to an intoxication test would affect his commercial driver's license privileges. In issue one, the DPS asserts that the ALJ was statutorily bound to suspend McGlaun's license. The DPS asserts in issue two that the commercial driver's license warnings were not applicable to McGlaun's situation. Finally, in issue three, the DPS contends the ALJ erred when he held that McGlaun's refusal to submit to intoxication tests was coerced. We reverse and remand.

### II. BACKGROUND

On August 18, 1999, Fort Worth Police Officer Janke received information on his in-car computer that there was a possible intoxicated driver on westbound Interstate 30. After receiving information on the description of the suspected vehicle and its license plate number, Officer Janke observed the car weaving from side to side. Officer Janke stopped the car and identified McGlaun as the driver. During the stop, Officer Janke noticed a strong odor of alcohol on McGlaun's breath and person. Officer Janke also observed that McGlaun's eyes were watery and bloodshot, his balance was unsteady, and his speech was slurred. McGlaun also performed poorly on several field sobriety tests. Officer Janke arrested McGlaun for driving while intoxicated. After his arrest, McGluan received the statutory warning required by chapter 724 of the transportation code and was asked to take a breath test, which he refused. TEX. TRANSP. CODE ANN. § 724.035(a)(1) (Vernon 1999). McGlaun then signed his statutory warnings.

Based on his failure to take an alcohol concentration test, the DPS suspended McGlaun's license. McGlaun requested a hearing to challenge the decision. Because he had a commercial driver's license, McGlaun argued that Officer Janke should have given him warnings regarding the effect his refusal to take an alcohol concentration test would have on his commercial driver's license. However, the DPS argued that because McGlaun was not driving a commercial vehicle when he was

stopped, chapter 522 did not apply; therefore, Officer Janke was not required to give him those warnings. The ALJ agreed that McGlaun should have been given the additional warnings and did not allow the DPS to suspend McGlaun's license. The county court at law upheld the ALJ's decision.

## III. DISCUSSION

In its second issue, the DPS alleges that chapter 522 of the transportation code does not apply to drivers who are not driving commercial vehicles when they are stopped. Therefore, officers are not required to give the driver warnings concerning the effect refusal to take an alcohol concentration test would have on the driver's commercial driver's license.

■ An officer must give a Driving While Intoxicated suspect certain statutory warnings before he can request a breath specimen from him. TEX. TRANSP. CODE ANN. §§ 522.103, 724.015 (Vernon 1999). In order to ensure that a suspect's refusal is voluntary, the police must warn the suspect about the actual, direct, statutory consequences of the suspect's refusal. *Erdman v. State,* 861 S.W.2d 890, 894 (Tex.Crim.App.1993).

Appellee relies on the holding in *Texas Department of Public Safety v. Thomas* in support of his position that the DPS was required to inform him of the consequences refusal to submit to a breath test would have on his commercial driver's license. 985 S.W.2d 567, 569–70 (Tex. App.—Waco 1998, no pet.). In *Thomas,* the court held that the driver was entitled to warnings concerning his commercial driver's license pursuant to section 522.089(a) of the transportation code. *Id.* Section 522.089(a) provides that "[a] suspension, revocation, cancellation, or denial of a driver's license or privilege under Chapter 521 or another law of this state

disqualifies the person under this chapter." TEX. TRANSP. CODE ANN. § 522.089(a). Referring to the "another law of this state" language in section 522.089(a), the court held that the suspension of a commercial driver's license does not have to be predicated upon offenses committed while driving a commercial motor vehicle. *See id.*

However, DPS cites this court's opinion in *Texas Department of Public Safety v. Chavez* to support its contention that McGlaun was not entitled to a warning that his refusal to submit to an intoxication test would have an impact on his commercial driving privileges. 981 S.W.2d 449, 451 (Tex.App.—Fort Worth 1998, no pet.). In *Chavez,* we stated that the driver was not entitled to the warnings contained in sections 522.102 and 522.103 because those sections only apply to drivers who are detained while driving a commercial motor vehicle. *Id.* at 452; *see also* TEX. TRANSP. CODE ANN. §§ 522.102, 522.103. We further stated that section 724.015 does not distinguish between commercial and non-commercial vehicles; instead, it applies to all motor vehicles. *Chavez,* 981 S.W.2d at 453.

■ In fact, McGlaun's statutory warning included a warning that "[y]our license, permit, or privilege to operate a motor vehicle will be suspended or denied for not less than ninety (90) days." *See* TEX. TRANSP. CODE ANN. § 724.015(2)(A). This warning encompassed all motor vehicles, which includes a commercial motor vehicle. *See id.* at § 522.003(5) (defining "commercial motor vehicle" as "a motor vehicle or combination of motor vehicles used to transport passengers or property" within certain classifications); *Chavez,* 981 S.W.2d at 453. Section 724.015 does not authorize a maximum length for a suspension of a driver's license. *See* TEX. TRANSP. CODE ANN. § 724.015(2)(A) (mandating a warning that the suspension would be for

*not less than* 90 days). The fact that McGlaun's commercial driver's license could be suspended for at least one year pursuant to section 522.089(b) does not negate the notice that his license to operate a motor vehicle would be suspended. The fact that different consequences are authorized by more than one applicable statute does not reduce the notice given to the defendant of the consequences provided for in each. *Chavez,* 981 S.W.2d at 452–53; *Ex parte Luster,* 846 S.W.2d 928, 930 (Tex.App.—Fort Worth 1993, pet. ref'd). Therefore, the statutory warnings that McGlaun received under section 724.015 were sufficient to comply with both chapters 522 and 724.

Based on *Chavez,* we agree that the DPS was not required to give McGlaun the warnings set forth in sections 522.102 and 522.103 because the warnings McGlaun was given pursuant to section 724 were sufficient under the circumstances to comply with both chapters 522 and 724. We sustain the DPS's second issue.[1]

## IV. CONCLUSION

Having sustained the DPS's second issue on appeal, we reverse the county court at law's judgment and remand the case for further proceedings.

WALKER, J. filed a dissenting opinion.

WALKER, Justice, dissenting.

I respectfully dissent. I would affirm the decision reached by both the Administrative Law Judge ("ALJ") and the judge of County Court at Law No. 3.

## INTRODUCTION

During oral argument before this Court, the Department of Public Safety ("DPS")

agreed that McGlaun possesses a single driver's license: a commercial driver's license. A person does not have a separate standard driver's license and commercial driver's license. *See* TEX. TRANSP. CODE ANN. § 521.085 (Vernon 1999). McGlaun's license looks just like a regular driver's license except that at the top of the license under the word "Texas" the designation "Department of Public Safety Commercial Driver License" appears. McGlaun's license number is written on the police report documenting McGlaun's arrest. The officers therefore knew that McGlaun possessed a commercial driver's license at the time they gave him the statutory warnings prior to requesting a breath specimen. I would hold that because McGlaun possessed a commercial driver's license, he was entitled to be warned that he would be prohibited from driving a commercial motor vehicle during any period of license suspension so that he could make an informed decision, with a full understanding of the consequences of refusal, as to whether to give a breath specimen. I believe this result is compelled by the purpose underlying the requirement that officers provide warnings to suspects they intend to ask to provide a breath specimen, by the plain wording and proper statutory construction of the relevant provisions of the transportation code, and by existing case law.

## PURPOSE OF STATUTORY WARNINGS

The statutory provision requiring an officer to inform a person of the effect of a failure to give a breath specimen is to provide constitutional safeguards in suspension of a driver's license; the underlying purpose is to ensure that a person who

---

1. Because of our disposition of the DPS's second issue we do not need to address its first and third issues. *See* TEX.R.APP. P. 47.1.

refuses to give a requested specimen does so *with full understanding of the consequences.* Taylor v. Tex. Dep't of Pub. Safety, 754 S.W.2d 464, 466 (Tex.App.—Fort Worth 1988, writ denied) (applying Texas Revised Civil Statute article 6701*l* 5, section 2(b) now codified in section 724.015 of the Texas Transportation Code); *see also Tex. Dep't. of Pub. Safety v. Thomas,* 985 S.W.2d 567, 569 (Tex.App.—Waco 1998, no pet.). The Court of Criminal Appeals has. repeatedly held that a suspect's decision to submit to a breath test must truly be his own, made freely and with a correct understanding of the actual statutory consequences of refusal. *Erdman v. State,* 861 S.W.2d 890, 893 (Tex. Crim.App.1993); *Turpin v. State,* 606 S.W.2d 907, 914 (Tex.Crim.App.1980). That is, a suspect must be advised of the actual, statutory consequences of the refusal to give a breath specimen to ensure that the suspect's consent to providing a breath specimen is voluntary. *Turpin,* 606 S.W.2d at 914; *Nebes v. State,* 743 S.W.2d 729, 730 (Tex.App.—Houston [1st Dist.] 1987, no pet.) ("A careful reading of these sections shows that their underlying purpose is to ensure that a person who refuses to give a requested specimen does so with a full understanding of the consequences.").

In this case, the evidence is undisputed that McGlaun possessed a commercial driver's license. The DPS concedes that McGlaun's refusal to submit a breath specimen resulted in the automatic suspension of his ability to drive a commercial motor vehicle for at least the 90–day period of suspension. I would hold that McGlaun should have been warned of this automatic, statutory consequence of his refusal to submit a breath specimen so that he could make an informed decision as to whether to refuse to give a breath specimen.

## CONSTRUCTION OF TRANSPORTATION CODE

Chapter 522 of the transportation code is titled, "Commercial Driver's Licenses." *See* TEX. TRANSP. CODE ANN. ch. 522 (Vernon 1999 & Supp.2001). This chapter is to be liberally construed and to the extent it conflicts with the general provisions applicable to driver's licenses, it controls. *Id.* § 522.002 revisor's note. Section 522.089 of the transportation code states:

**Effect of Suspension, Revocation, Cancellation, or Denial of License Under Other Law**

(a) *A suspension,* revocation, cancellation, or denial *of a driver's license* or privilege *under* Chapter 521 or *another law of this state disqualifies the person under this chapter.*

(b) If this chapter disqualifies a person for a longer period than the other law, the person is disqualified for the longer period.

*Id.* § 522.089 (emphasis added). Section 522.011 prohibits a person who is disqualified from driving a commercial motor vehicle. *Id.* § 522.011(a)(1)(B). The Texas Administrative Code provides that "[i]f a *person's commercial driver's license has been disqualified for an offense committed in a noncommercial motor vehicle* (CMV), that person is eligible to receive an occupational license to operate non-CMV's only." 37 TEX. ADMIN. CODE § 16.97 (Supp.2000), *available at* http:/info.sos.state.tx.us/pub/plsql/readtac$ext.ViewTAC (Title 37, Pt. 1, Ch. 16, Sbch. D, Rule § 16.97) (emphasis added).

Chapter 724, on the other hand, is titled "Implied Consent." Section 724.015 requires that before requesting a person to submit to the taking of a specimen, the officer shall inform the person orally and in writing that: (1) if the person refuses to submit to the taking of the specimen, that

refusal may be admissible in a subsequent prosecution; and (2) if the person refuses to submit to the taking of the specimen, the person's license to operate a motor vehicle will be automatically suspended for not less than 90 days if the person is 21 years of age or older. TEX. TRANSP. CODE ANN. § 724.015.

In construing a statute, we are to give the words used their ordinary meanings and, if possible, ascertain the Legislature's intent from the language used in the statute. *Tex. Dep't of Pub. Safety v. Harris*, 33 S.W.3d 406, 409 (Tex.App.—Fort Worth 2000, no pet.). Every word used in a statute must be presumed to have been used for a purpose, and every word excluded from a statute must also be presumed to have been excluded for a purpose. *Id.* If a general provision conflicts with a special provision, we are to construe the provisions, if possible, so that effect is given to both. TEX. GOV'T CODE ANN. § 311.026(a) (Vernon 1998).

Applying these well-established rules of statutory construction to the relevant provisions of the transportation code, I would hold that chapter 522 dealing with commercial driver's licenses is a specific statute that controls over the general provisions of chapter 724's implied consent provisions when the suspect is a commercial motor vehicle license holder. In fact, the legislature instructed that the provisions of the commercial driver's license chapter were to prevail over the general provisions applicable to standard driver's licenses. Act of May 29, 1989, 71st Leg., R.S., ch. 236, § 1, 1989 Tex. Gen. Laws 1086 (current version at TEX. TRANSP. CODE ANN. § 522.002 (Vernon 1999)). I agree with the majority and with the DPS's position in this appeal that sections 522.102(a) and 522.103 of the transportation code apply only to a person who is driving a commercial motor vehicle at the time of his arrest. TEX. TRANSP. CODE ANN. §§ 522.102(a), 522.103; *see also Tex. Dep't of Pub. Safety v. Chavez*, 981 S.W.2d 449, 451 (Tex.App.—Fort Worth 1998, no pet.). That is, an individual stopped for DWI in a noncommercial vehicle who refuses to submit a breath specimen does not *automatically* lose his commercial driving privileges for one year. However, section 522.089 mandates the *automatic disqualification* of a person to drive a commercial motor vehicle at least for the period of time that person's license is suspended under any law. TEX. TRANSP. CODE ANN. § 522.089(a); *Chavez*, 981 S.W.2d at 453 (recognizing that section 522.089 applied to Chavez even though he was not driving a commercial motor vehicle at the time of his arrest).

In accordance with the Code of Construction Act, I would construe these statutory provisions to give effect to all of them by requiring that a suspect holding a commercial driver's license be warned of the statutory consequences of his refusal to submit a breath specimen as those consequences are set forth in *both* section 724.015 and section 522.089(a). I would require that prior to requesting a breath specimen from a suspect who holds a commercial driver's license the officer warn the suspect that his commercial driving privileges will be suspended for not less than the period of time he is prohibited from driving a noncommercial motor vehicle.

The majority claims a warning that "your license, permit, or privilege to operate a motor vehicle will be suspended or denied for not less than ninety (90) days" constitutes a sufficient warning under both chapters 522 and 724. The majority writes, "The fact that different consequences are authorized by more than one applicable statute does not reduce the no-

tice given to the defendant of the consequences provided for in each." I do not agree that the general chapter 724 warnings given to McGlaun put him on notice that he would be unable to drive commercial motor vehicles during the period of suspension. The DPS itself recently took the position that the suspension of a driver's license under chapter 724 did not result in any suspension of the right to drive a commercial motor vehicle during the period of suspension. *Thomas,* 985 S.W.2d at 570 ("Applying DPS's interpretation would result in Thomas being suspended for ninety days from driving non-commercial motor vehicles but free during his suspension to drive commercial motor vehicles."). If the DPS itself believed that a suspension under chapter 724 did not result in the suspension of the privilege to drive commercial motor vehicles, a contrary understanding cannot be imputed to McGlaun as a matter of law.

Moreover, the legislative intent behind section 522.103—that a person possessing a commercial driver's license understand the consequences that his refusal to submit a breath specimen has on his commercial driver's license—are equally applicable whether the person is driving a commercial motor vehicle at the time of his arrest or not. It is not logical to hold that a person driving a commercial motor vehicle at the time of his arrest is entitled to warnings concerning the consequences on his commercial driving privileges of a breath specimen refusal, but that a person driving a noncommercial vehicle is not entitled to warnings concerning the impact of a breath specimen refusal on his commercial driving privileges. The DPS concedes automatic disqualification of commercial driving privileges results in either circumstance. The only difference is the period of disqualification. The differing disqualification periods are immaterial. A suspect possessing a commercial driver's license should be informed that his refusal to submit a breath specimen will result in his disqualification to drive a commercial motor vehicle for at least the period of suspension.

In fact, a warning that refusal to submit a breath specimen will result in automatic disqualification to drive a commercial motor vehicle seems more necessary to ensure a full understanding of the consequences of a breath test refusal when the suspect is driving a noncommercial motor vehicle at the time of his arrest. The suspect driving his personal vehicle at the time of his arrest is less likely to realize that the automatic suspension effects his commercial driving privileges while a commercial driver arrested driving a commercial vehicle will likely realize that the matter involves his commercial driver's license. For these reasons, I would hold that, applying the rules of statutory construction to the relevant transportation code sections, the ALJ and the Judge of County Court at Law No. 3 correctly determined that McGlaun was not properly warned.

## CASE LAW

In *Thomas,* Thomas appealed an ALJ decision to suspend his driver's license for refusal to give a breath specimen to County Court at Law No. 3 of Tarrant County. 985 S.W.2d at 568. The judge of County Court at Law No. 3 reversed Thomas's license suspension because Thomas was not warned that his refusal to give a breath specimen could result in his disqualification from driving a commercial vehicle. *Id.* at 569. On appeal by the DPS, the Waco Court of Appeals affirmed the county court at law. The Waco Court held that because a suspension, revocation, cancellation, or denial of a driver's license under another law, i.e., a law other than chapter 522 (the commercial driver's license chapter), disqualifies a person under

chapter 522, the suspension of Thomas's driver's license necessarily contemplates the suspension of his commercial driver's license. *Id.* at 569–70 (citing TEX. TRANSP. CODE ANN. § 522.089). Thus, the Waco Court held that Thomas, a commercial driver's license holder who was driving his personal vehicle at the time of his arrest, was entitled to be warned that his refusal to submit a breath specimen would result in his disqualification from driving a commercial vehicle. *Thomas,* 985 S.W.2d at 570.

As previously mentioned, the DPS argued in *Thomas* that just because Thomas's driver's license would be suspended did not mean his commercial driver's license also would be suspended. *Id.* Before this court, the DPS concedes that its position in *Thomas* was erroneous. In this case, the DPS argues that McGlaun's commercial driver's license is not statutorily, automatically suspended for one year but instead is only statutorily, automatically suspended for whatever length of suspension is imposed under chapter 724.

A distinction based on the *length* of the statutory, automatic suspension of a suspect's commercial driver's license for refusal to submit a breath specimen is a distinction without a difference. The DPS agrees that McGlaun's commercial license is statutorily, automatically suspended when he refuses to submit a breath specimen. The fact that this suspension may be for less than a year is not relevant. McGlaun was entitled, as a commercial driver's license holder, to be informed that his refusal to provide a breath specimen would result in his automatic disqualification from driving a commercial motor vehicle for at least the time period of suspension.

This court's prior decision in *Chavez* does not dictate a reversal in this case. In *Chavez,* we held that sections 522.102 and 522.103 do not apply when a person is arrested while driving a noncommercial motor vehicle. 981 S.W.2d at 451–52. This is not a section 522.102 or section 522.103 case. This is a section 522.089 case. The DPS agrees that pursuant to section 522.089, McGlaun's commercial driving privileges were automatically suspended as a result of his refusal to submit a breath specimen. McGlaun was entitled to be informed of this statutory consequence of his refusal to submit a breath specimen so that he could make an informed decision. *See, e.g., Erdman,* 861 S.W.2d at 893.

For the foregoing reasons, I agree with the decisions reached by the ALJ, and the County Court of Law No. 3. I would affirm.