

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0119-12

**CASEY RAY FIENEN, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SIXTH COURT OF APPEALS FANNIN COUNTY

**JOHNSON, J., filed a concurring opinion.**

## C O N C U R R I N G   O P I N I O N

I concur in the judgment of the Court, but I disagree with the Court's decision to overrule *Erdman v. State*, 861 S.W.2d 890 (Tex. Crim. App. 1993). The majority argues that, because the courts of appeals have incorrectly applied the ruling in *Erdman*–"rules developed by *Erdman*'s progeny are contrary to the fundamental rules of determining whether consent was rendered voluntarily," and "the rules developed post-*Erdman* misapply the relevant burden of proof"– this Court should overrule *Erdman*. It seems to me that, if rules generated by the progeny of *Erdman* are the problem, we should be overruling the progeny, not the parent.

The logic of *Erdman* is not flawed, although apparently misunderstood. The *Erdman* Court did consider the totality of the circumstances; the officer gave Erdman some information that stated the law correctly, but added statements about the consequences of refusing or taking a breath test that were not the law. The Court did not focus exclusively on the impermissible statements, and it clearly placed the burden of proving voluntariness on the state[1]. *Id.* at 894. The holding is stated clearly: "We are holding only that law enforcement officials must take care to warn D.W.I. suspects correctly about the actual, direct, *statutory* consequences of refusal. Any other information conveyed to D.W.I. suspects may have the effect–either intended or unintended–of undermining their resolve and effectively coercing them to consent." *Id.* That holding reflects that the *Erdman* Court was enforcing the statute, as written and that the statute authorized two, and only two, specific consequences that "will definitely and directly result from a refusal to submit to a breath test: . . .." *Id.* at 893.

The Court also held that the extra-statutory information was of the sort that would normally be coercive. Paraphrased, the officer told Erdman, if you take the test and pass, you can go home, but if you fail, you'll go to jail tonight. Or, in the immortal words of Dirty Harry, "Do [you] feel lucky?" The outcome of events arising from the statutory warnings is known from the moment they are given–if you refuse, the refusal will be admissible against you in a court of law and your license to drive will be suspended for 90 days. In comparison, the outcome of events based on the extra-statutory information is uncertain and speculative–if you choose to take the test, the consequences

---

[1] "Given the complete absence of any record evidence showing that this non-statutory information given to appellant had *no* bearing on his decision to consent, no rational factfinder could conclude that the State carried its burden of showing that appellant's consent was voluntary." *Id.* at 894. *But see*, footnote 2: "In its brief, the State forthrightly 'agrees with the general proposition that [it] has a burden of showing voluntary consent to an intoxilyzer test.' We will assume without deciding, therefore, that under Article 67011-5, § 2, the State has the burden of showing voluntary consent to a breath test." *Id.* at 893 n.2.

will not be known until the test is completed. Certainty of outcome is the key to understanding the finding of coerciveness as to the instructions at issue in *Erdman*.

In this case, the officer answered questions that appellant asked. As to his questions that affected the issue of voluntariness, she clarified what procedures would be used because he had refused to take the breath test. Her answers were accurate statements about those procedures, and she did not discuss speculative outcomes. Throughout the encounter and arrest, and although appellant vacillated on whether to give a sample of his breath, the officer gave only answers that comported with the statutory language. Because all of the officer's answers to appellant's questions fell within statutory bounds, I would find that no *Erdman* error occurred. Because no *Erdman* error occurred, this Court has no cause to overrule *Erdman* in this case, nor, I would argue under current law, in any case. As I have said, if the problem is the interpretation of *Erdman* by the courts of appeals, that is the problem that should be addressed.

I concur in the judgment of the Court.

Filed: November 21, 2012
Publish