IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0119-12






CASEY RAY FIENEN, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


FANNIN COUNTY





 Johnson, J., filed a concurring opinion.

 


C O N C U R R I N G O P I N I O N 



 I concur in the judgment of the Court, but I disagree with the Court's decision to overrule
Erdman v. State, 861 S.W.2d 890 (Tex. Crim. App. 1993). The majority argues that, because the
courts of appeals have incorrectly applied the ruling in Erdman-"rules developed by Erdman's
progeny are contrary to the fundamental rules of determining whether consent was rendered
voluntarily," and "the rules developed post-Erdman misapply the relevant burden of proof"- this
Court should overrule Erdman. It seems to me that, if rules generated by the progeny of Erdman are
the problem, we should be overruling the progeny, not the parent.

 The logic of Erdman is not flawed, although apparently misunderstood. The Erdman Court
did consider the totality of the circumstances; the officer gave Erdman some information that stated
the law correctly, but added statements about the consequences of refusing or taking a breath test that
were not the law. The Court did not focus exclusively on the impermissible statements, and it clearly
placed the burden of proving voluntariness on the state (1). Id. at 894. The holding is stated clearly:
"We are holding only that law enforcement officials must take care to warn D.W.I. suspects correctly
about the actual, direct, statutory consequences of refusal. Any other information conveyed to
D.W.I. suspects may have the effect-either intended or unintended-of undermining their resolve and
effectively coercing them to consent." Id. That holding reflects that the Erdman Court was
enforcing the statute, as written and that the statute authorized two, and only two, specific
consequences that "will definitely and directly result from a refusal to submit to a breath test: . . .."
Id. at 893. 

 The Court also held that the extra-statutory information was of the sort that would normally
be coercive. Paraphrased, the officer told Erdman, if you take the test and pass, you can go home,
but if you fail, you'll go to jail tonight. Or, in the immortal words of Dirty Harry, "Do [you] feel
lucky?" The outcome of events arising from the statutory warnings is known from the moment they
are given-if you refuse, the refusal will be admissible against you in a court of law and your license
to drive will be suspended for 90 days. In comparison, the outcome of events based on the extra-statutory information is uncertain and speculative-if you choose to take the test, the consequences
will not be known until the test is completed. Certainty of outcome is the key to understanding the
finding of coerciveness as to the instructions at issue in Erdman.

 In this case, the officer answered questions that appellant asked. As to his questions that
affected the issue of voluntariness, she clarified what procedures would be used because he had
refused to take the breath test. Her answers were accurate statements about those procedures, and
she did not discuss speculative outcomes. Throughout the encounter and arrest, and although
appellant vacillated on whether to give a sample of his breath, the officer gave only answers that
comported with the statutory language. Because all of the officer's answers to appellant's questions
fell within statutory bounds, I would find that no Erdman error occurred. Because no Erdman error
occurred, this Court has no cause to overrule Erdman in this case, nor, I would argue under current
law, in any case. As I have said, if the problem is the interpretation of Erdman by the courts of
appeals, that is the problem that should be addressed.

 I concur in the judgment of the Court.


Filed: November 21, 2012

Publish

 

1. "Given the complete absence of any record evidence showing that this non-statutory information given to
appellant had no bearing on his decision to consent, no rational factfinder could conclude that the State carried its
burden of showing that appellant's consent was voluntary." Id. at 894. But see, footnote 2: "In its brief, the State
forthrightly 'agrees with the general proposition that [it] has a burden of showing voluntary consent to an intoxilyzer
test.' We will assume without deciding, therefore, that under Article 67011-5, § 2, the State has the burden of
showing voluntary consent to a breath test." Id. at 893 n.2.