COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-266-CR

 

 

LINDA LOUISE BERGNER                                                       APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

           FROM COUNTY
CRIMINAL COURT NO. 2 OF DENTON COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------       

I.  Introduction

Appellant Linda Louise Bergner appeals her
conviction for driving while intoxicated (DWI). 
In four points, Bergner contends that the trial court erred by denying
her motion to suppress the results of her breath test and by denying a jury
instruction to disregard any evidence that the jury believed was illegally
obtained.  We will affirm.        








II.  Factual and Procedural Background

The Roanoke Police Department received a call
from an unknown caller reporting that a possibly intoxicated driver in a yellow
truck with no taillights was driving Aall over
the roadway.@ 
Sergeant Shannon Perry was dispatched to the area and saw the
truck.  Sergeant Perry initiated a
traffic stop because the truck failed to maintain a single lane and its taillights
were out.  Bergner was driving the
truck.  

During the stop, Sergeant Perry detected an odor
of alcohol on Bergner=s breath and observed that
Bergner=s eyes
were glossy, bloodshot, and slightly droopy. 
He also saw a glass of spilled liquid on the floorboard.  Although Bergner initially said that she had
not been drinking, she later admitted that she had been drinking at a friend=s house
and that the liquid on the floorboard was wine. 
Sergeant Perry performed the horizontal gaze nystagmus test, the
walk-and-turn test, and the one-leg stand test on Bergner.  Bergner failed the first two tests and passed
the one-leg stand test.  Sergeant Perry
arrested Bergner for DWI.  








Sergeant Perry took Bergner to the intoxilyzer
room at the police station, where the following events were videotaped.  Sergeant Perry provided Bergner with a copy
of the DIC-24 warnings and read them aloud to her.  Bergner then agreed to submit to a breath
test.  The officer left the room, and
while he was out of the room, Bergner used her cell phone to call her friend
Jackie Ruis.  Jackie told her to refuse
the breath test, and Bergner responded that she would go to jail if she did not
take the test.  The officer reentered the
room, and a few minutes later, Bergner asked him, AWhat
happens if I say no?@ 
The officer told her that she would go to jail if she did not blow.  Bergner took the breath test, and the two results
measured .085 and .089, above the legal limit. 

Bergner filed a motion to suppress the results of
the breath test, and at the suppression hearing, she claimed that the officer=s
extra-statutory warning that she would go to jail if she failed the breath test
made her consent involuntary.  The trial
court denied Bergner=s motion to suppress, finding
that Bergner was not coerced into taking the breath test. 

III.  Motion to Suppress

In her first three points, Bergner complains that
the trial court erred by refusing to suppress her breath test results in
violation of the United States and Texas constitutions and Texas statutory law.


A.  Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the record is silent on the reasons for
the trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  Kelly,
204 S.W.3d at 819; see  Amador,
221 S.W.3d at 673; Wiede, 214 S.W.3d at 25.  We then review the trial court=s legal
ruling de novo unless the implied fact findings supported by the record are
also dispositive of the legal ruling.  Kelly,
204 S.W.3d at 819.

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).  

B.  Consent to Breath Test








The implied consent statute
provides that a person arrested for suspected DWI is deemed to have consented
to providing specimens for a breath or blood test.  Tex. Transp. Code Ann. '
724.011(a) (Vernon 1999).  However, the
person retains an absolute right to refuse a test.  Id. '
724.013.  An adult person arrested for
DWI must be warned that refusal to submit to a breath test will result in the
following consequences: (1) evidence of the refusal will be admissible against
the person in court, and (2) the person=s driver=s
license will be suspended for not less than 180 days.  Id.
'
724.015(1)B(2) (Vernon Supp. 2008); Erdman
v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993) (applying former
version of section 724.015 imposing 90-day suspension).  The person must likewise be informed of the
possible consequences if he submits to the test and the results of the test
show a prohibited blood‑alcohol level. 
See Tex. Transp. Code Ann. '
724.015(3)B(4). 








A suspect=s
consent to a breath test must be voluntary. 
Turpin v. State, 606 S.W.2d 907, 914 (Tex. Crim. App. 1980)
(applying former version of section 724.015). 
For consent to a breath test to be deemed voluntary, a suspect=s
decision must not be the result of physical pressure or psychological pressure
brought to bear by law enforcement officials. 
See Thomas v. State, 723 S.W.2d 696, 704B05 (Tex.
Crim. App. 1986) (recognizing that consent to breath test is not voluntary if
induced by physical force or mental coercion); Schafer v. State, 95
S.W.3d 452, 455 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d)
(recognizing that consent to breath test is not voluntary if induced by
misstatement of direct statutory consequences of refusal).  A suspect=s
decision to submit to a breath test must be his own, made freely, and with a
correct understanding of the statutory consequences of refusal.  Erdman, 861 S.W.2d at 893.

If the officer requesting the breath sample
misstates the law and includes extra-statutory consequences of a refusal to
submit to the breath test, the consent may be considered to have been
involuntarily given.  See Erdman,
861 S.W.2d at 893B94; State v. Serrano, 894
S.W.2d 74, 75B76 (Tex. App.CHouston
[14th Dist.] 1995, no pet.); State v. Sells, 798 S.W.2d 865, 866 (Tex.
App.CAustin
1990, no pet.).  In Erdman, the
arresting officer gave the suspect the statutorily required warnings concerning
the consequences of refusing to submit to a breath test but added additional,
extra‑statutory warnings.  Erdman,
861 S.W.2d at 893B94.  The extra‑statutory warnings included
the following:  (1) that DWI charges
would be filed against the suspect and (2) that he would be put in jail that
night.  Id. at 891, 894.  The court of criminal appeals held that the
extra‑statutory warnings conveyed to the suspect were of the type that
would result in Aconsiderable psychological
pressure.@ 
Id. at 894.  Erdman
thus stands for the proposition that law enforcement officials Amust
take care to warn D.W.I. suspects correctly about the actual, direct, statutory
consequences of refusal.@  Id.                       

 

 








C.  Bergner=s
Consent to Breath Test 








Although Bergner is correct that Sergeant Perry=s
extra-statutory statement is substantially the same as the statement at issue
in Erdman, Erdman is not controlling because here, unlike in Erdman,
the record is not devoid of evidence that the officer=s
statement had no bearing on Bergner=s
decision to take the breath test.  Compare
Erdman, 861 S.W.2d at 893B94
(noting complete absence of evidence showing extra-statutory warning had no
bearing on defendant=s decision to consent), with
Urquhart v. State, 128 S.W.3d 701, 705 (Tex. App.CEl Paso
2004, pet. ref=d) (distinguishing Erdman where
there was Aconsiderable other evidence@ that
consent was voluntary).  In Erdman,
the court of criminal appeals emphasized that Erdman Aconsented
to the intoxilyzer test only after the trooper gave him [the
extra-statutory warnings] concerning the consequences of refusal.@  Erdman, 861 S.W.2d at 893B94
(emphasis added); see also Thorn v. State, No. 02-95-00872-CR, 1997 WL
672623, at *4 (Tex. App.CDallas Oct. 30, 1997, pet. ref=d) (not
designated for publication) (distinguishing Erdman and holding that
extra-statutory warnings given after defendant consented to breath test had no
impact on whether she should take the test). 
Here, Bergner testified at the suppression hearing that she voluntarily
consented to taking the breath test initially, and our review of the videotape
shows that when asked whether she would take the test, she replied, AYou bet.@  At that time, she had received only the
statutory warnings.  Bergner testified
that after talking with her friend, however, she decided not to take the test
but that because the officer said she could go to jail if she refused, she
ultimately took the breath test.  But
Bergner never revoked her consent.  The
trial court, as the sole trier of fact and judge of Bergner=s
credibility at the suppression hearing, was entitled to disbelieve Bergner=s
testimony concerning a private, unexpressed decision she purportedly made to
not submit a breath specimen after she had voluntarily consented to the breath
test.  See Wiede, 214 S.W.3d at 24B25; Ross,
32 S.W.3d at 855; see also Ness v. State, 152 S.W.3d 759, 763B64 (Tex.
App.CHouston
2004, pet. ref=d) (holding that trial court
acted within its discretion by rejecting appellant=s
professed understanding of the officer=s
extra-statutory warning).








Additionally, Bergner failed to show a causal
connection between the extra-statutory statement and her consent to the breath
test.  See Sandoval v. State, 17
S.W.3d 792, 795B97 (Tex. App.CAustin
2000, pet. ref=d).  Bergner testified on cross-examination that
she already knew she would go to jail if she refused to take the breath test,
and the videotape reveals that when her friend told her not to take the breath
test, Bergner responded, ASo spend the night in jail?@  Because Bergner already understood the
consequences of refusing to blow, Sergeant Perry=s
extra-statutory statementCmade after Bergner agreed to
take the testCcould not have caused the Apsychological
pressures@ that case law is designed to
prevent.  See Erdman, 861 S.W.2d
at 893B94; Serrano,
894 S.W.2d at 75B76; Sells, 798 S.W.2d at
866.  Affording almost total deference to
the trial court=s determination of historical
facts that are supported by the record and to the trial court=s
credibility determinations, we hold that the trial court did not err by denying
Bergner=s motion
to suppress.  See Wiede, 214
S.W.3d at 24; Kelly, 204 S.W.3d at 818. 
We overrule Bergner=s first,
second, and third points.

IV.  Jury Instruction

In her fourth point, Bergner argues that the
trial court erred by refusing her request to instruct the jury to Adisregard
any evidence that was [obtained] in violation of the law, specifically the
breath specimen.@ 


A. 
Standard of Review








    Appellate review of error in
a jury charge involves a two-step process. Abdnor v. State, 871 S.W.2d
726, 731 (Tex. Crim. App. 1994). 
Initially, we must determine whether error occurred.  If so, we must then evaluate whether
sufficient harm resulted from the error to require reversal.  Id. at 731B32.  Error in the charge, if timely objected to in
the trial court, requires reversal if the error was Acalculated
to injure the rights of [the] defendant,@ which
means no more than that there must be some harm to the accused from the
error.  Tex. Code Crim. Proc. Ann. art.
36.19 (Vernon 2006); see also Abdnor, 871 S.W.2d at 731B32; Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g).  In other words, a properly preserved error
will require reversal as long as the error is not harmless.  Almanza, 686 S.W.2d at 171.  In making this determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@  Id.; see also Ovalle v. State,
13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

B.  Article
38.23 Jury Instruction








Under article 38.23 of the code of criminal
procedure, no evidence obtained in violation of the federal or state
constitutions or laws may be admitted in evidence against the accused.  Tex. Code Crim. Proc. Ann. art. 38.23(a)
(Vernon 2005). When the evidence raises an issue regarding a violation, the
jury must be instructed that if it believes, or has a reasonable doubt, that
the evidence was obtained in violation of the law, it must disregard the
illegally obtained evidence.  Id.  A defendant=s right
to the submission of jury instructions under article 38.23(a) is limited to
disputed issues of fact that are  material
to her claim of a constitutional or statutory violation that would render
evidence inadmissible.  Madden v.
State, 242 S.W.3d 504, 509B10 (Tex.
Crim. App. 2007).  To raise a disputed
fact issue warranting an article 38.23(a) jury instruction, there must be some
affirmative evidence that puts the existence of that fact into question.  Id. at 513.   If there is no disputed factual issue, the
legality of the conduct is determined by the trial judge alone, as a question
of law.  Id. at 510.  A cross-examiner=s
questions do not create a conflict in the evidence, although the witness=s
answers to those questions might.  Id.
(citing Garza v. State, 126 S.W.3d 79, 86B87 &
n.3 (Tex. Crim. App. 2004)).

Here, Bergner contends that the videotape and
Sergeant Perry=s testimony present a factual
issue regarding Bergner=s consent to take the breath
test.  Bergner specifically points to the
following exchange on cross-examination of Sergeant Perry:

[Defense Counsel:]        And that=s the DWI law.

Okay.  When you asked her if she blewCshe blows.  She said sure, right? And then you left?

 

[Perry:]                        Yes.

 

[Defense Counsel:]        She talks to a friend, and it=s clear that she doesn=t want to take the test
at that point?

 

[Perry:]                        Yes.
She asked about it, yes.

 








[Defense Counsel:]        Well, if she was just going to say yes, and if she was going
to keep saying yes, why would she ask you what would happen if I said no?

 

[Perry:]                        It=s a question.  I don=t know, sir. 
At the time I hadn=t watched the video and
didn=t know what was going
on.  I did not know.  I walked in, she asked the question.

 

[Defense Counsel:]        I totallyCI=m with you. 
You=re out of the room when
she=s talking to a friend,
and the friend goes, don=t blow in the
machine.  It doesn=t make any sense.  She=s, like, why shouldn=t I?  Right? 
You=ve seen that now.

 

[Perry:]                        Yes.  Yes.

 

[Defense Counsel:]        You didn=t know that at the time?

 

[Perry:]                        No.

 

. . .
.

 

[Defense Counsel:]        But it was clear, now that you watched the tape, that she
says, well, I=m not going to blow in
the machine.  My friend told me not to,
right?

 

[Perry:]                        After
watching the video tape, yes.

 

[Defense Counsel:]        And I know you didn=t know that, but did you do something wrong inCin your opinion when she
asked you if she didn=t blow in the machine
what would happen?

 

[Perry:]                        I
said she would go to jail.

 

[Defense Counsel:]        You=re not supposed to do
that, are you?

 








[Perry:]                        It
would happen either way.  No.  

 

Bergner points only to the above testimony and
the videotape as raising a conflict in the evidence regarding the voluntariness
of her consent.  The videotape shows that
Sergeant Perry gave the appropriate statutory warnings before obtaining Bergner=s
consent and that Bergner never revoked her consent.  The officer=s
answers to trial counsel=s questions on cross‑examination
were insufficient to raise a disputed fact issue warranting an article 38.23(a)
jury instruction.  See Madden, 242
S.W.3d at 513.  The jury was not present
for the suppression hearing, where Bergner testified that she took the breath
test because Sergeant Perry said she could go to jail if she refused, and
Bergner did not testify at trial.  No
evidence presented to the jury raised a disputed fact issue related to the
voluntariness of her consent.  See
id.  Consequently, Bergner was not
entitled to an article 38.23 jury instruction. 

C.  Harmless Error








Even assuming that the officer=s
testimony during cross-examination is some evidence in support of Bergner=s
contention that she was coerced into taking the breath test and that,
consequently, a fact issue necessitated an article 38.23 instruction, any error
was harmless.  Tex. Code Crim. Proc. Ann.
art. 36.19; see also Abdnor, 871 S.W.2d at 731B32; Almanza,
686 S.W.2d at 171.  Under the information
and the jury charge, the jury was authorized to find that Bergner was
intoxicated under the per se definition of intoxicationCthat her
blood alcohol concentration was 0.08 or moreCor under
the impairment theoryCthat she did not have the normal
use of her mental or physical faculties by reason of the introduction of
alcohol into her body.  See Tex.
Penal Code Ann. ' 49.01(2) (Vernon
2003).  Bergner=s breath
test results Awere pieces in the evidentiary
puzzle for the jury to consider@ in
determining whether she was intoxicated at the time she drove.  Stewart v. State, 129 S.W.3d 93, 97
(Tex. Crim. App. 2004).  The jury had
other evidence of Bergner=s intoxication, such as the
arresting officer=s testimony about Bergner=s
driving patterns before he pulled her over, the results of Bergner=s field
sobriety tests, Bergner=s admission to the officer that
she had been drinking, the spilled glass of wine on the floorboard of Bergner=s truck,
and the videotape of the encounter.  See
id.  Sergeant Perry testified that he
arrested Bergner based on her driving, the odor of alcohol on her breath, the
alcohol in the truck, and the results of the field sobriety tests.  








Regarding the breath test, the videotape
demonstrates that Bergner received the required statutory warnings and agreed
to take the breath test.  Bergner testified
at trial that even before asking the officer what would happen if she refused
the test, she knew she would go to jail. 
We conclude that the trial court=s denial
of the requested jury instruction was not calculated to injure Bergner=s rights
and that, based on the record, any error was harmless.  See Tex. Code Crim. Proc. Ann. art.
36.19; see also Abdnor, 871 S.W.2d at 731B32; Almanza,
686 S.W.2d at 171.  We overrule Bergner=s fourth
point.

V.  Conclusion

Having overruled Bergner=s four
points, we affirm the trial court=s
judgment.

                                                        

SUE
WALKER

JUSTICE

 

PANEL: HOLMAN, GARDNER,
and WALKER, JJ

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: October 30,
2008

 











[1]See Tex. R. App. P. 47.4.