

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-266-CR

LINDA LOUISE BERGNER                                        APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Linda Louise Bergner appeals her conviction for driving while intoxicated (DWI). In four points, Bergner contends that the trial court erred by denying her motion to suppress the results of her breath test and by denying a jury instruction to disregard any evidence that the jury believed was illegally obtained. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Roanoke Police Department received a call from an unknown caller reporting that a possibly intoxicated driver in a yellow truck with no taillights was driving "all over the roadway." Sergeant Shannon Perry was dispatched to the area and saw the truck. Sergeant Perry initiated a traffic stop because the truck failed to maintain a single lane and its taillights were out. Bergner was driving the truck.

During the stop, Sergeant Perry detected an odor of alcohol on Bergner's breath and observed that Bergner's eyes were glossy, bloodshot, and slightly droopy. He also saw a glass of spilled liquid on the floorboard. Although Bergner initially said that she had not been drinking, she later admitted that she had been drinking at a friend's house and that the liquid on the floorboard was wine. Sergeant Perry performed the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test on Bergner. Bergner failed the first two tests and passed the one-leg stand test. Sergeant Perry arrested Bergner for DWI.

Sergeant Perry took Bergner to the intoxilyzer room at the police station, where the following events were videotaped. Sergeant Perry provided Bergner with a copy of the DIC-24 warnings and read them aloud to her. Bergner then agreed to submit to a breath test. The officer left the room, and while he was

2

out of the room, Bergner used her cell phone to call her friend Jackie Ruis. Jackie told her to refuse the breath test, and Bergner responded that she would go to jail if she did not take the test. The officer reentered the room, and a few minutes later, Bergner asked him, "What happens if I say no?" The officer told her that she would go to jail if she did not blow. Bergner took the breath test, and the two results measured .085 and .089, above the legal limit.

Bergner filed a motion to suppress the results of the breath test, and at the suppression hearing, she claimed that the officer's extra-statutory warning that she would go to jail if she failed the breath test made her consent involuntary. The trial court denied Bergner's motion to suppress, finding that Bergner was not coerced into taking the breath test.

### III. MOTION TO SUPPRESS

In her first three points, Bergner complains that the trial court erred by refusing to suppress her breath test results in violation of the United States and Texas constitutions and Texas statutory law.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own

3

factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818

4

(Tex. Crim. App. 2006).  When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings.  *Kelly*, 204 S.W.3d at 819; *see  Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25.  We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling.  *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### B.  Consent to Breath Test

The implied consent statute provides that a person arrested for suspected DWI is deemed to have consented to providing specimens for a breath or blood test.  Tex. Transp. Code Ann. § 724.011(a) (Vernon 1999).  However, the person retains an absolute right to refuse a test.  *Id.* § 724.013.  An adult person arrested for DWI must be warned that refusal to submit to a breath test

5

will result in the following consequences: (1) evidence of the refusal will be admissible against the person in court, and (2) the person's driver's license will be suspended for not less than 180 days. *Id.* § 724.015(1)–(2) (Vernon Supp. 2008); *Erdman v. State*, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993) (applying former version of section 724.015 imposing 90-day suspension). The person must likewise be informed of the possible consequences if he submits to the test and the results of the test show a prohibited blood-alcohol level. *See* Tex. Transp. Code Ann. § 724.015(3)–(4).

A suspect's consent to a breath test must be voluntary. *Turpin v. State*, 606 S.W.2d 907, 914 (Tex. Crim. App. 1980) (applying former version of section 724.015). For consent to a breath test to be deemed voluntary, a suspect's decision must not be the result of physical pressure or psychological pressure brought to bear by law enforcement officials. *See Thomas v. State*, 723 S.W.2d 696, 704–05 (Tex. Crim. App. 1986) (recognizing that consent to breath test is not voluntary if induced by physical force or mental coercion); *Schafer v. State*, 95 S.W.3d 452, 455 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (recognizing that consent to breath test is not voluntary if induced by misstatement of direct statutory consequences of refusal). A suspect's decision to submit to a breath test must be his own, made freely, and with a

6

correct understanding of the statutory consequences of refusal. *Erdman*, 861 S.W.2d at 893.

If the officer requesting the breath sample misstates the law and includes extra-statutory consequences of a refusal to submit to the breath test, the consent may be considered to have been involuntarily given. *See Erdman*, 861 S.W.2d at 893–94; *State v. Serrano*, 894 S.W.2d 74, 75–76 (Tex. App.—Houston [14th Dist.] 1995, no pet.); *State v. Sells*, 798 S.W.2d 865, 866 (Tex. App.—Austin 1990, no pet.). In *Erdman*, the arresting officer gave the suspect the statutorily required warnings concerning the consequences of refusing to submit to a breath test but added additional, extra-statutory warnings. *Erdman*, 861 S.W.2d at 893–94. The extra-statutory warnings included the following: (1) that DWI charges would be filed against the suspect and (2) that he would be put in jail that night. *Id.* at 891, 894. The court of criminal appeals held that the extra-statutory warnings conveyed to the suspect were of the type that would result in "considerable psychological pressure." *Id.* at 894. *Erdman* thus stands for the proposition that law enforcement officials "must take care to warn D.W.I. suspects correctly about the actual, direct, *statutory* consequences of refusal." *Id.*

7

### C. Bergner's Consent to Breath Test

Although Bergner is correct that Sergeant Perry's extra-statutory statement is substantially the same as the statement at issue in *Erdman*, *Erdman* is not controlling because here, unlike in *Erdman*, the record is not devoid of evidence that the officer's statement had no bearing on Bergner's decision to take the breath test. *Compare Erdman*, 861 S.W.2d at 893–94 (noting complete absence of evidence showing extra-statutory warning had no bearing on defendant's decision to consent), *with Urquhart v. State*, 128 S.W.3d 701, 705 (Tex. App.—El Paso 2004, pet. ref'd) (distinguishing *Erdman* where there was "considerable other evidence" that consent was voluntary). In *Erdman*, the court of criminal appeals emphasized that Erdman "consented to the intoxilyzer test *only after* the trooper gave him [the extra-statutory warnings] concerning the consequences of refusal." *Erdman*, 861 S.W.2d at 893–94 (emphasis added); *see also Thorn v. State*, No. 02-95-00872-CR, 1997 WL 672623, at *4 (Tex. App.—Dallas Oct. 30, 1997, pet. ref'd) (not designated for publication) (distinguishing *Erdman* and holding that extra-statutory warnings given after defendant consented to breath test had no impact on whether she should take the test). Here, Bergner testified at the suppression hearing that she voluntarily consented to taking the breath test initially, and our review of the videotape shows that when asked whether she

8

would take the test, she replied, "You bet." At that time, she had received only the statutory warnings. Bergner testified that after talking with her friend, however, she decided not to take the test but that because the officer said she could go to jail if she refused, she ultimately took the breath test. But Bergner never revoked her consent. The trial court, as the sole trier of fact and judge of Bergner's credibility at the suppression hearing, was entitled to disbelieve Bergner's testimony concerning a private, unexpressed decision she purportedly made to not submit a breath specimen after she had voluntarily consented to the breath test. *See Wiede*, 214 S.W.3d at 24–25; *Ross*, 32 S.W.3d at 855; *see also Ness v. State*, 152 S.W.3d 759, 763–64 (Tex. App.—Houston 2004, pet. ref'd) (holding that trial court acted within its discretion by rejecting appellant's professed understanding of the officer's extra-statutory warning).

Additionally, Bergner failed to show a causal connection between the extra-statutory statement and her consent to the breath test. *See Sandoval v. State*, 17 S.W.3d 792, 795–97 (Tex. App.—Austin 2000, pet. ref'd). Bergner testified on cross-examination that she already knew she would go to jail if she refused to take the breath test, and the videotape reveals that when her friend told her not to take the breath test, Bergner responded, "So spend the night in jail?" Because Bergner already understood the consequences of refusing to blow, Sergeant Perry's extra-statutory statement—made after Bergner agreed

9

to take the test—could not have caused the "psychological pressures" that case law is designed to prevent. *See Erdman*, 861 S.W.2d at 893–94; *Serrano*, 894 S.W.2d at 75–76; *Sells*, 798 S.W.2d at 866. Affording almost total deference to the trial court's determination of historical facts that are supported by the record and to the trial court's credibility determinations, we hold that the trial court did not err by denying Bergner's motion to suppress. *See Wiede,* 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818. We overrule Bergner's first, second, and third points.

## IV. JURY INSTRUCTION

In her fourth point, Bergner argues that the trial court erred by refusing her request to instruct the jury to "disregard any evidence that was [obtained] in violation of the law, specifically the breath specimen."

### A. Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error. Tex. Code

Crim. Proc. Ann. art. 36.19 (Vernon 2006); *see also Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In other words, a properly preserved error will require reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see also Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

### B. Article 38.23 Jury Instruction

Under article 38.23 of the code of criminal procedure, no evidence obtained in violation of the federal or state constitutions or laws may be admitted in evidence against the accused. Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). When the evidence raises an issue regarding a violation, the jury must be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the law, it must disregard the illegally obtained evidence. *Id.* A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to her claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10

11

(Tex. Crim. App. 2007). To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Id.* at 513. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. *Id.* at 510. A cross-examiner's questions do not create a conflict in the evidence, although the witness's answers to those questions might. *Id.* (citing *Garza v. State*, 126 S.W.3d 79, 86–87 & n.3 (Tex. Crim. App. 2004)).

Here, Bergner contends that the videotape and Sergeant Perry's testimony present a factual issue regarding Bergner's consent to take the breath test. Bergner specifically points to the following exchange on cross-examination of Sergeant Perry:

| [Defense Counsel:] | And that's the DWI law. Okay. When you asked her if she blew — she blows. She said sure, right? And then you left? |
|---|---|
| [Perry:] | Yes. |
| [Defense Counsel:] | She talks to a friend, and it's clear that she doesn't want to take the test at that point? |
| [Perry:] | Yes. She asked about it, yes. |
| [Defense Counsel:] | Well, if she was just going to say yes, and if she was going to keep saying yes, why |

12

would she ask you what would happen if I said no?

[Perry:]    It's a question. I don't know, sir. At the time I hadn't watched the video and didn't know what was going on. I did not know. I walked in, she asked the question.

[Defense Counsel:]    I totally—I'm with you. You're out of the room when she's talking to a friend, and the friend goes, don't blow in the machine. It doesn't make any sense. She's, like, why shouldn't I? Right? You've seen that now.

[Perry:]    Yes. Yes.

[Defense Counsel:]    You didn't know that at the time?

[Perry:]    No.

. . . .

[Defense Counsel:]    But it was clear, now that you watched the tape, that she says, well, I'm not going to blow in the machine. My friend told me not to, right?

[Perry:]    After watching the video tape, yes.

[Defense Counsel:]    And I know you didn't know that, but did you do something wrong in—in your opinion when she asked you if she didn't blow in the machine what would happen?

[Perry:]    I said she would go to jail.

[Defense Counsel:]    You're not supposed to do that, are you?

13

[Perry:]               It would happen either way.  No.

Bergner points only to the above testimony and the videotape as raising a conflict in the evidence regarding the voluntariness of her consent. The videotape shows that Sergeant Perry gave the appropriate statutory warnings before obtaining Bergner's consent and that Bergner never revoked her consent. The officer's answers to trial counsel's questions on cross-examination were insufficient to raise a disputed fact issue warranting an article 38.23(a) jury instruction. *See Madden*, 242 S.W.3d at 513. The jury was not present for the suppression hearing, where Bergner testified that she took the breath test because Sergeant Perry said she could go to jail if she refused, and Bergner did not testify at trial. No evidence presented to the jury raised a disputed fact issue related to the voluntariness of her consent. *See id.* Consequently, Bergner was not entitled to an article 38.23 jury instruction.

### C. Harmless Error

Even assuming that the officer's testimony during cross-examination is some evidence in support of Bergner's contention that she was coerced into taking the breath test and that, consequently, a fact issue necessitated an article 38.23 instruction, any error was harmless. Tex. Code Crim. Proc. Ann. art. 36.19; *see also Abdnor*, 871 S.W.2d at 731–32; *Almanza*, 686 S.W.2d at 171. Under the information and the jury charge, the jury was authorized to find

14

that Bergner was intoxicated under the per se definition of intoxication—that her blood alcohol concentration was 0.08 or more—or under the impairment theory—that she did not have the normal use of her mental or physical faculties by reason of the introduction of alcohol into her body. *See* Tex. Penal Code Ann. § 49.01(2) (Vernon 2003). Bergner's breath test results "were pieces in the evidentiary puzzle for the jury to consider" in determining whether she was intoxicated at the time she drove. *Stewart v. State*, 129 S.W.3d 93, 97 (Tex. Crim. App. 2004). The jury had other evidence of Bergner's intoxication, such as the arresting officer's testimony about Bergner's driving patterns before he pulled her over, the results of Bergner's field sobriety tests, Bergner's admission to the officer that she had been drinking, the spilled glass of wine on the floorboard of Bergner's truck, and the videotape of the encounter. *See id.* Sergeant Perry testified that he arrested Bergner based on her driving, the odor of alcohol on her breath, the alcohol in the truck, and the results of the field sobriety tests.

Regarding the breath test, the videotape demonstrates that Bergner received the required statutory warnings and agreed to take the breath test. Bergner testified at trial that even before asking the officer what would happen if she refused the test, she knew she would go to jail. We conclude that the trial court's denial of the requested jury instruction was not calculated to injure

15

Bergner's rights and that, based on the record, any error was harmless. *See* Tex. Code Crim. Proc. Ann. art. 36.19; *see also Abdnor*, 871 S.W.2d at 731–32; *Almanza*, 686 S.W.2d at 171. We overrule Bergner's fourth point.

## V. CONCLUSION

Having overruled Bergner's four points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: HOLMAN, GARDNER, and WALKER, JJ

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 30, 2008