

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ERNESTO SAENZ, | § | No. 08-12-00344-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | County Criminal Court at Law No. 3 |
| | § | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| | § | (TC# 20100C03235) |
| Appellee. | § | |

## **O P I N I O N**

The issue in this case is whether Ernesto Saenz was coerced to provide a breath specimen. The trial court concluded he was and suppressed the results of the Breathalyzer test. On appeal, the State argues the trial court erroneously relied on *Erdman v. State*, 861 S.W.2d 890 (Tex.Crim.App. 1993) in granting Saenz's motion to suppress and Saenz's consent was valid under the totality of the circumstances. We reverse and remand.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Saenz was pulled over by El Paso Police Officers Albert Jesus Gandara, Jr. and Eduardo Chavez when his vehicle drifted into their lane of traffic. While speaking to Saenz, Gandara smelled the odor of alcohol on Saenz's breath and noticed Saenz's eyes were "a little bit glazed." In response to questioning, Saenz admitted he had an open bottle of whiskey in his vehicle and

had earlier consumed four drinks at a bar. With Saenz's permission, Gandara conducted the three standard field sobriety tests: the horizontal gaze nystagmus test; the walk-and-turn test; and the one-leg-stand test.[1] Saenz exhibited four of six clues of intoxication on the horizontal gaze nystagmus test and an unspecified number of clues of intoxication on the walk-and-turn and one-leg stand tests.

Based on his observations and Saenz's performance on the field sobriety tests, Gandara placed Saenz under arrest for DWI. Following his arrest, Saenz submitted two breath samples on an Intoxilyzer machine. The two samples—taken approximately one and one-half hours after Saenz was stopped —showed Saenz's breath-alcohol level to be 0.084 grams of alcohol per 210 liters of breath and 0.079 grams of alcohol per 210 liters of breath, respectively.

The State charged Saenz with misdemeanor DWI. *See* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2013). Saenz filed a pretrial motion to suppress the breath test on the basis, among others, that his consent to the test was involuntary because "[t]he officers . . . gave [him] improper statutory warnings . . . ."[2] The trial court held an evidentiary hearing on Saenz's motion, during which the State called Gandara as a witness.

Gandara testified that after arresting Saenz for DWI, he read to him the statutory warnings from a form known as the "DIC-24," which advised Saenz that a breath specimen was being requested and that he could refuse to provide one.[3] On cross-examination, Gandara acknowledged he improperly deviated from the language of the DIC-24 by mentioning the word

---

[1] Gandara also administered the vertical gaze nystagmus test, but he acknowledged that "[i]t's not one of the clues that we look for . . . ."

[2] Saenz filed two motions to suppress.

[3] The DIC-24 was not admitted into evidence at the suppression hearing.

2

"prosecution" repeatedly and by "[t]hrow[ing] out the District Attorney's Office and probable collateral consequences." The video recording of the traffic stop confirms Gandara read to Saenz the warnings from the DIC-24 and conveyed to Saenz non-statutory information in, what Gandara later described as, an attempt to "clarify some of the issues for [Saenz] that are on the form."[4] The non-statutory information conveyed to Saenz concerned "the consequences of refusing a breath test and the consequences of giving it." Especially relevant here, Gandara told Saenz that, if he gave a breath specimen and the results were less than .08, he would get to keep his license, "we don't suspend it, and more likely than not, the DA's office usually drops the charges for DWI cuz it's under--now that is something the DA's office does, not that we do." After he finished admonishing Saenz, Gandara requested that Saenz provide a breath specimen. Saenz agreed to do so.

Gandara testified Saenz's consent was voluntary. Gandara also acknowledged Saenz feared losing his job as a firefighter and, consequently, asked for leniency. According to Gandara, and as corroborated by the video recording of the traffic stop, Saenz asked for leniency when handcuffed and, repeatedly, when placed in the rear of the patrol unit. Gandara testified he tried to ease Saenz's fears by "telling him examples of, unfortunately, police officers that have been arrested for it." Again, Gandara's testimony is corroborated by the video recording of the traffic stop. On cross-examination, Gandara conceded Saenz was likely "thinking about all of these consequences that can come from giving a breath sample or not" and could have been swayed to give a breath specimen based on the extra-statutory information conveyed to him.

Following the close of evidence, the prosecutor and defense counsel presented their

---

[4] The time displayed on the video recording was off by one hour because it had not been updated to reflect the change in Daylight Savings Time.

arguments. Defense counsel argued that, based on *Erdman*, the results of the Breathalyzer test should be suppressed because the extra-statutory warnings resulted in psychological pressure amounting to coercion. The prosecutor countered that *Erdman* was distinguishable because, unlike *Erdman*, the consequences of refusal were not in issue here. According to the prosecutor, the extra-statutory warnings:

> [D]ealt with consequences of a blow below .08 and what the DA's office would do. He was merely stating what the DA's office would do. These comments do not rise to the standard of *Erdman*.

In essence, the prosecutor argued "extra warnings do not equal coercion. . . . [a]s long as the consequences of refusal are not an issue." The trial court took the matter under advisement.

The trial court, without explaining the basis for its ruling, subsequently issued a written order granting Saenz's motion. The State requested that the trial court issue findings of fact and conclusions of law, and the trial court complied. Of the trial court's thirty seven findings of fact, the following pertain to the issue of consent:

> 23. Officer Gandara further testified that just after he put the handcuffs on the defendant, Mr. Saenz asked him for a break and told the officer he could lose his job because he's a firefighter; (see video at 23:20:43);
>
> .                    .                    .
>
> 25. Officer Gandara presented the statutory warnings to the defendant and read from the DIC-24 (see video at 23:24:19) and then elaborates 'in other words, if you refuse to give us a breath specimen' (see video at 23:25:44) 'your driver's license is suspended for not less than 180 days', et cetera;
>
> 26. Officer Gandara testified (see video at 23:26:10) 'if you give a specimen of under 0.08, then your license is not suspended, and it's more likely than not that the DA's office usually drops the charges. Now, that's something that the DA's office does not accept we do, okay';
>
> 27. Officer Gandara then informed the defendant on video (see 23:27:48) 'At this time I am requesting a specimen of your breath.' The defendant answers,

'Yes';

28.  On the audio portion of the tape (see 23:30:08) the defendant again asks Officer Gandara for a break.   'Buddy, you know, I'm going to lose my job for this.   I just started less than two (2) years ago.   I will lose my job.'

29.  On the audio portion of the tape (see 23:30:08) the defendant states, 'I'm serious.   I'm gonna lose my job';

Based on its findings, the trial court concluded:

The Court finds that based on the totality of the circumstances that the numerous extra statutory consequences presented to the defendant by Officer Gandara of his refusal to submit to the breath test inherently coerced said defendant's decision to submit to the test.
Officers must take care to warn DWI suspects correctly about the actual and direct and statutory consequences of refusal, any other intended or unintended information conveyed by the requesting Officer undermines the question of whether the defendant effectively consented or whether he was induced to consent.
The Court also finds based on its observations of Officer Gandara and the incongruency between his In-court assertions and the audio/video representations in the video, that said Officer's credibility was suspect, at best.

## LEGAL CONSEQUENCE OF EXTRA-STATUTORY WARNINGS

We begin by addressing the State's argument that the trial court erroneously relied on *Erdman* to conclude Gandara's extra-statutory warnings inherently coerced Saenz to provide a breath specimen.

### *Applicable Law*

Until overruled by *Fienen v. State*, 390 S.W.3d 328 (Tex.Crim.App. 2012), *Erdman* stood for the proposition that, in the absence of any other evidence and circumstances showing a suspect's consent to taking a breath test was voluntary, warnings encompassing additional, non-statutory consequences of refusal were *inherently and necessary coercive*.   *Erdman*, 861 S.W.2d at 893-94.   Deciding that this legal principle was the product of confused and flawed

5

reasoning, the *Fienen* court rejected its use in determining whether consent was rendered voluntarily. *Fienen*, 390 S.W.3d at 334-35. The court explained the State satisfies its burden to prove voluntary consent by clear and convincing evidence if the totality of the circumstances demonstrates the defendant's consent did not result from physical or psychological pressures applied by law enforcement.[5] *Id*. at 335. Accordingly, "no one statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality." *Id*. at 333.

### *Discussion*

Here, it is evident from the parties' arguments at trial and the trial court's findings of fact and conclusions of law that the trial court, despite claiming its decision was based "on the totality of the circumstances," relied singularly on *Erdman* in granting Saenz's motion to suppress. The focus of the closing arguments for both sides was *Erdman's* applicability, and the trial court concluded unequivocally that Gandara's additional, non-statutory warnings "*inherently coerced* [Saenz]'s decision to submit to the test." [Emphasis added]. Indeed, the second paragraph of the trial court's conclusion of law is an amalgamation of several principles espoused in *Erdman*. *See Erdman*, 861 S.W.2d at 894 ("We are holding only that law enforcement officials must take care to warn D.W.I. suspects correctly about the actual, direct, *statutory* consequences of refusal. Any other information conveyed to D.W.I. suspects may have the effect—either intended or unintended—of undermining their resolve and effectively coercing them to consent."). [Emphasis in the original.]. Because *Erdman* has been

---

[5] Even when *Erdman* was binding precedent, this Court considered the totality of the circumstances in determining whether consent to provide a breath specimen was voluntary. *See Urquhart v. State*, 128 S.W.3d 701, 705 (Tex.App.--El Paso 2003, pet. ref'd)("If the *Erdman* court implicitly discussed the totality of the circumstances, which we believe to be part of the appropriate standard, it was that no other proof existed—i.e. the record was devoid of other evidence and circumstances showing the test to be voluntary.")[Internal citations omitted].

overruled, the trial court erred in relying on it to conclude Gandara's extra-statutory warnings to Saenz amounted to coercion as a matter of law.

Saenz acknowledges *Erdman* was overruled by *Fienen* , but contends "the trial court did not err in basing its suppression analysis on . . . *Erdman* . . ." because "*Erdman* represented the correct legal standard" when the trial court ruled on his motion. Saenz asserts this is so because *Fienen* was decided nineteen days after the trial court's ruling and the Court of Criminal Appeals has yet to pronounce *Fienen* applies retroactively. But the general rule is a judicial decision applies retroactively unless the Court chooses otherwise or a decision deprives persons of "fair warning" of the conduct that will give rise to particular criminal penalties. *Proctor v. State*, 967 S.W.2d 840, 845 n.5 (Tex.Crim.App. 1998). A judicial decision may be applied retroactively if it does not alter an offense's definition, range of punishment, or substantive defenses. *Id.*

As the Court of Criminal Appeals has not chosen to limit *Fienen*'s retroactive application, we likewise decline to do so. Further, as applied to Saenz, the holding in *Fienen* does not alter: (1) the definition of Saenz's alleged offense; (2) the offense's range of punishment; or (3) Saenz's available defenses. Accordingly, we conclude *Fienen*'s totality-of-the-circumstances test governs our review of the trial court's suppression ruling.[6] *See Henderson v. United States*, —— U.S. ——, 133 S.Ct. 1121, 1129-30, 185 L.Ed.2d 85 (2013)(adopting the time-of-review rule for federal plain error analysis).

**CONSENT IN LIGHT OF THE TOTALITY OF THE CIRCUMSTANCES**

---

[6] It is questionable whether *Erdman*, even had it not been overruled, compels the outcome urged by Saenz. In *Erdman*, there was a complete absence of any record showing that the extra-statutory information conveyed to the appellant had no bearing on his decision to consent. *Erdman*, 861 S.W.2d at 894. Accordingly, because the State presented no evidence showing consent was voluntary, whether the defendant was actually coerced, was not a fact question at the suppression hearing. Here, by contrast, whether Saenz was coerced by the extra-statutory information conveyed to him was the disputed issue, and the State presented considerable evidence, including the video and audio recording of Saenz's interaction with Gandara and Gandara's testimony, in an attempt to prove Saenz's consent was voluntary.

7

We now turn our attention to the State's contention that the trial court erred in granting Saenz's motion to suppress.

### *Applicable Law*

Any person who is arrested for DWI is deemed to have consented to provide a specimen for a breath or blood test to determine alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance. *See* TEX.TRANSP.CODE ANN. § 724.011(a)(West 2011). Accordingly, a peace officer may request a breath or blood specimen from a person arrested for DWI. TEX.TRANSP.CODE ANN. § 724.012. However, before an officer may request a specimen, the officer must give the person certain statutory admonishments. TEX.TRANSP.CODE ANN. § 724.015 (West Supp. 2013).

Especially pertinent to this case, a person must be warned of two specific consequences resulting from his refusal to provide a specimen: (1) his refusal may be admissible in a subsequent prosecution; and (2) his driver's license will be automatically suspended for not less than 180 days. TEX.TRANSP.CODE ANN. § 724.015(1)-(2). Although peace officers should refrain from communicating extra-statutory consequences to suspects, "non-statutory language does not automatically amount to coercion or create an inference thereof." *Fienen*, 390 S.W.3d at 335. Rather, "statements made by law-enforcement officers to suspects must be analyzed under the totality of the circumstances" "from the point of view of the objectively reasonable person." *Id*. at 333, 335 [Internal quotation marks and citations omitted]. The ultimate question is whether the person's will has been overborne and his capacity for self-determination critically impaired by physical or psychological pressure to such an extent that his consent cannot be considered voluntary. *Id*. at 333.

8

*Standard of Review*

When the voluntariness of consent has been raised as an issue in a motion to suppress, the trial court must—as noted above—consider the totality of the circumstances in ruling on the motion. *Fienen*, 390 S.W.3d at 333-35. In reviewing the trial court's ruling, we view the totality of the circumstances in light most favorable to the ruling and uphold the ruling unless it is clearly erroneous. *Id*. at 335.

In conducting our review, we give a trial court's determination of historical facts almost total deference, especially when they are based on an evaluation of credibility and demeanor and supported by the record. *Id*. at 335, *citing Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). "That same deferential standard of review 'applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into evidence at a suppression hearing.'" *State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013)[Internal citations omitted]. "Although appellate courts may review *de novo* 'indisputable visual evidence' contained in a videotape, the appellate court must defer to the trial judge's factual findings on whether a witness actually saw what was depicted on a videotape or heard what was said . . . ." *Id*. at 570-71 [Internal citations omitted].

Unlike a trial court's determination of historical facts, a trial court's determination of questions of law and "mixed questions of law and fact" not depending upon credibility and demeanor are not accorded almost total deference but are instead reviewed *de novo*. *Fienen*, 390 S.W.3d at 335, *citing Guzman*, 955 S.W.2d at 89. The voluntariness-of-consent issue is a mixed question of law and fact, and if its resolution turns on credibility and demeanor, we review the trial court's ruling with almost total deference. *State v. Hunter*, 102 S.W.3d 306, 309

9

(Tex.App.--Fort Worth 2003, no pet.). If we find the resolution of that issue is based on uncontroverted facts, we review the trial court's ruling *de novo*. *Vargas v. State*, 18 S.W.3d 247, 253 (Tex.App.--Waco 2000, pet. ref'd).

### *Discussion*

Even when viewed in the light most favorable to the trial court's ruling, the totality of the circumstances here demonstrate Saenz voluntarily consented to provide a breath specimen.

First, the evidence incontrovertibly establishes that Saenz's consent was not the product of physical or psychological pressure brought to bear upon him by Gandara. The video and audio recording of the exchange between Gandara and Saenz reveals that Gandara acted professionally and accommodatingly and did not use threats, deception, or physical touching, or a demanding tone of voice or language. *Cf. Fienen*, 390 S.W.3d at 336. The recording also shows that, while being admonished, Saenz remained calm, appeared preoccupied by his own thoughts, did not interrupt Gandara, and did not ask any questions about the consequences of providing a breath specimen. The recording likewise shows that, after being admonished, Saenz did not hesitate or refuse to provide a breath specimen or indicate he had second-thoughts or had changed his mind. As a matter of fact, Saenz never once refused to provide a breath specimen, even when presented the opportunity to do so later at the stationhouse after his first breath sample was rejected as invalid. And although Saenz can be heard on the recording expressing fear about his job—before and after being admonished—Saenz never asked Gandara if providing a breath specimen would help him retain his job or secure his release, and Gandara did not offer leniency in exchange for the specimen.

Second, the nature of the evidence presented in the video recording does not pivot on an

10

evaluation of credibility and demeanor, and the trial court's factual findings recounting the exchange between Gandara and Saenz do not suggest the contrary. Nor do these findings depend upon the trial judge's credibility assessment of Gandara's testimony concerning the exchange because there is no factual dispute regarding whether Gandara actually saw what was depicted on the video recording or heard what was said.[7]

Thus, in light of the totality of the circumstances and in the absence of any evidence of coercive police tactics, we cannot conclude the extra-statutory admonishments invalidated consent that was otherwise voluntary. Accordingly, the trial court clearly erred in granting Saenz's motion to suppress on the basis that "the numerous extra statutory consequences . . . inherently coerced [Saenz]'s decision to submit to the test."

Saenz offers a number of reasons why the State cannot show the trial court erred in granting his motion to suppress. None are persuasive, however.

Saenz first contends the State failed to preserve its complaint for appellate review. He asserts the State cannot argue that "the trial court erred in granting [him] a suppression remedy under *Erdman* . . . because the State has failed to provide any legal analysis of whether *Erdman* error occurred in its brief[.]" The State does not argue *Erdman* is the correct legal standard and the trial court merely misapplied *Erdman* to the facts in this case. Rather, the State is arguing

---

[7] As mentioned above, the trial court concluded Officer Gandara's "credibility was suspect, at best[,]" "based on its observations of Officer Gandara and the incongruency between his In-court assertions and the audio/video representations in the video[.]" However, only one of the trial court's thirty seven findings of fact reflects a credibility determination. That finding states, "Officer Gandara stated that it was Officer Chavez who first made contact with the defendant and when he returned to Officer Gandara, informed him that the defendant's breath smelled of alcohol; (The video, however, depicts both officers approaching the defendant's vehicle at the same time after the stop. Officer Gandara on the passenger side and Officer Chavez by the driver's side)." Although accurate, this finding relates to a discrepancy between Gandara's testimony and the events depicted in the video recording that is ultimately irrelevant in determining whether Gandara's extra-statutory warnings rendered Saenz's consent involuntary. This is because the nature of the evidence relevant to making that determination does not pivot on an evaluation of credibility and demeanor, as reflected in the trial court's other findings of fact.

*Erdman* is the wrong legal standard and, therefore, the trial court erroneously relied on *Erdman* in granting Saenz's motion to suppress. Accordingly, the State is under no obligation to prove "*Erdman* error" as urged by Saenz.

Alternatively, Saenz asserts "the State has thus waived any right to complain of any *Fienen* error the trial court committed" "by failing to address, under the totality of the circumstances test, whether . . . [his] consent to give a DWI breath specimen was coerced based on numerous extra statutory warnings . . . ." According to Saenz, "[t]he State instead has adopted the untenable position that whatever extra statutory consequences a police officer communicates to a defendant can never render consent involuntary or coerced." Saenz misstates the State's position on appeal. The State never claims extra-statutory warnings are inconsequential in determining whether a suspect voluntarily consented to provide a breath specimen. Rather, the State argues extra-statutory warnings are not determinative in and of themselves but are viewed in light of the totality of the circumstances, as instructed by the *Fienen* court. In making this argument, the State does address—contrary to Saenz's assertion—the impact of Gandara's extra-statutory warnings on Saenz's decision to provide a breath sample. According to the State, the extra statutory warnings did not overcome Saenz's will and impair his capacity to consent because the warnings were "true and not deceptive" and nothing more than a translation in layman's terms of the information found in the DIC-24.

Saenz then argues the State is seeking relief based on an improper standard of appellate review and asks us to decline the State's invitation to conduct a "*de novo* review of the historical facts in deciding whether Saenz' consent . . . was voluntary or coerced." We have set out in detail the standard of appellate review applicable to a trial court's ruling on a motion to suppress.

12

Applying that standard, we have concluded the trial court erred in granting Saenz's motion to suppress.

Saenz ends by proposing that, if we conclude the trial court erred in relying on *Erdman* in granting his motion to suppress, the appropriate remedy is abatement rather than reversal. In urging us to abate the appeal and remand the case to the trial court "so it can assess whether Saenz's consent was voluntary using the legal standard specified in *Fienen*[,]" Saenz relies on Rule 44.4 of the Texas Rules of Appellate Procedure. *See* TEX.R.APP.P. 44.4 ("A court of appeals must not affirm . . . a judgment . . . if . . . the trial court's erroneous . . . failure . . . to act prevents the proper presentation of a case to the court of appeals; and . . . the trial court can correct its . . . failure to act. . . . [T]he court of appeals must direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous . . . failure to act had not occurred."). Abatement under Rule 44.4 is proper only when the trial court refuses to allow an appellant to take the steps necessary to preserve error, thus preventing him from properly presenting his case to the appellate court. *Fakeye v. State*, 227 S.W.3d 714, 717-18 (Tex.Crim.App. 2007); *LaPointe v. State*, 225 S.W.3d 513, 521-22 (Tex.Crim.App. 2007).

Here, the trial court's error was the application of incorrect law. This type of error is not remediable under Rule 44.4 because it did not prevent Saenz from developing the record for our review. *See Fakeye*, 227 S.W.3d at 718 (concluding trial court's failure to admonish defendant as to the deportation consequences of his plea was not remediable under Rule 44.4 because the error, though it may have affected the defendant's decision to plead guilty, did not prevent the defendant from presenting his case on appeal); *compare with Spence v. State*, 758 S.W.2d 597, 599-600 (Tex.Crim.App. 1988)(concluding trial court's refusal to permit a

13

defendant to make an offer of proof or a bill of exception was remediable under Rule 44.4), *Hutchinson v. State*, 86 S.W.3d 636, 638 n.1 (Tex.Crim.App. 2002)(concluding trial court's failure to conduct a proper *Batson* hearing was remediable under Rule 44.4), and *Bonham v. State*, 644 S.W.2d 5, 8-9 (Tex.Crim.App. 1983)(concluding trial court's failure to reduce to writing its findings of fact and conclusions of law on the disputed fact issues surrounding the taking of a confession was remediable under Rule 44.4). All of the information necessary for us to determine whether Saenz voluntarily consented to provide a breath specimen is contained in the existing appellate record, so there is no need for an additional hearing on the matter. By requesting abatement for a hearing to litigate the issue of voluntary consent under *Fienen*'s totality-of-the-circumstances test, Saenz is requesting another bite at the apple. This is not the function of Rule 44.4.

The State's issue is sustained.

## CONCLUSION

We reverse the trial court's order granting Saenz's motion to suppress and remand the case for trial.


August 26, 2014
                                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

14